**Earnest Earl WYATT, Plaintiff,**

v.

**INTERSTATE & OCEAN TRANSPORT COMPANY (formerly Interstate Oil Transport Co.)**

**and**

**Inland Boatmen's Union of the Seafarer's International Union of North America, Atlantic, Gulf Lakes and Inland Waters District, A.F.L.–C.I.O., Defendants.**

**Civ. A. No. 77–462–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Oct. 14, 1977.

Rabinowitz, Rafal & Swartz, Norfolk, Va., for plaintiff.

Jett, Berkley & Furr, Norfolk, Va., for Interstate & Ocean.

Breit, Rutter & Montagna, Norfolk, Va., for Inland Boatmen's.

## OPINION AND ORDER

CLARKE, District Judge.

This is an action brought by a discharged employee against his former employer for wrongful discharge and against his union for failing to fairly represent him in asserting this grievance. The question before the Court at this juncture is whether to stay these proceedings pending arbitration of the plaintiff's grievance or conversely whether to enjoin arbitration and let this action continue. Jurisdiction is grounded upon § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 and 28 U.S.C. § 1337.

### Facts

Plaintiff injured his back on November 2, 1973, aboard the tug, Crusader, while employed as a deckhand by defendant, Interstate & Ocean Transport Company, formerly Interstate Oil Transport Co. (hereinafter "Interstate"). Plaintiff was operated on for a ruptured lumbar disc on February 26,

1974, and after convalescence returned to work as a deckhand in October 1974. On March 10, 1975, while still employed by Interstate as a deckhand, plaintiff filed suit against his employer in this Court (Civil Action Number 76-23-NN), seeking $150,-000 in compensation for personal injuries stemming from the November 1973 accident. In late December 1976, plaintiff settled his personal injury action with Interstate. On January 4, 1977, Interstate fired the plaintiff, who, on January 5, 1977, notified defendant, Inland Boatmen's Union of the Seafarers' International Union (hereinafter "Union") of his discharge. The Union informed Interstate of the grievance and on January 11, 1977, John Fay, a representative of the Union, met with Interstate pursuant to Article II of the collective bargaining agreement between the Union and Interstate. Article II provided, in pertinent part:

[A] . . . complaints, disputes or grievances shall first be taken up by the representative of the Company within seven (7) days after the vessel reaches port, excluding Saturdays, Sundays, and holidays, or within seven (7) days after the Union has a reasonable opportunity to learn of the existence of a complaint, dispute or grievance. The party against whom the complaint has been filed shall have 72 hours to provide its answer to the complaint, dispute or grievance. If the parties are unable to settle the dispute within 30 days after the answer of the party complained against, the grieving party shall notify the other party in writing of a desire to submit the matter to arbitration; provided, however, that the parties to this Agreement shall confer, at least every 60 days, with same or, in the alternative, refer the grievance to arbitration as hereinafter set forth and provided, further that either party may in its sole discretion commence arbitration proceedings if it feels that further discussions relating to this grievance would be fruitless.

.      .      .      .      .

[E] Any grievance relating to a discharge shall be expedited and the matter shall automatically be arbitrable within five (5) working days from the date of discharge.

Subsequent to the January 11, 1977, meeting the Union apparently did nothing to press plaintiff's grievance until August 23, 1977, when it served a demand for arbitration upon the employer. Interstate claims that this seven month period of inaction was due to the fact that the Union was fully satisfied that the plaintiff's discharge had been for good cause. The Union's position confirms this interpretation, at least by implication, but it asserts that it was fraudulently misled by Interstate regarding plaintiff's physical condition and ability to work. Plaintiff contends he vigorously and continuously demanded that the Union further present his grievance to Interstate but that thirteen telephone calls and two letters prior to February 22, 1977, prompted no positive response from the Union. Finally, according to plaintiff, the Union told him flatly it would do nothing more for him. On July 12, 1977, plaintiff commenced this action. On August 23, 1977, the Union demanded arbitration of plaintiff's grievance. Subsequently, Interstate and plaintiff moved to enjoin arbitration and the Union moved to stay this action pending arbitration.

### The Law

Federal law reflects a policy broadly favoring arbitration of labor disputes. *Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Enterprise Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Under this policy as reflected in the Labor Management Relations Act, contract grievance procedures including arbitration must, unless specified as nonexclusive, be exhausted before direct legal redress is sought. *Republic Steel v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). However, there are

exceptions to this policy favoring arbitration of grievances under collective bargaining agreements. Where, for example, the employer's conduct amounts to a repudiation of such agreed procedures, the employee may sue the employer without first exhausting contractual grievance machinery. Or if the Union acts wrongfully in failing to fairly represent the employee in pressing his grievance, the employee may sue both Union and employer without first fully utilizing the grievance procedures under the contract. *Vaca v. Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

■ Plaintiff's allegations here clearly fall within the ambit of the *Vaca* rule:

> We think that another situation when the employee may seek judicial enforcement of his contractual rights arises if, as is true here, the union has sole power under the contract to invoke the higher stages of the grievance procedure, *and* if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance.
>
> .    .    .    .    .
>
> For these reasons, we think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance. (emphasis in original)

*Vaca v. Sipes, supra* at 185–86, 87 S.Ct. at 914.

The Union argues that despite a considerable delay in pressing plaintiff's grievance (due, it asserts to Interstate's fraudulent misrepresentations) it is now ready to champion his cause in arbitration. If the grievance is successfully asserted under contractual machinery, the Union contends, plaintiff will be made whole without resort to the courts, and the federal policy of non-judicial adjustment of labor disputes will be vindicated. Moreover, it is argued that if the plaintiff's claim is denied in arbitration he will still have this action, temporarily stayed but not dismissed, as a vehicle to press his claims against the Union and the company.

Although this argument has some superficial attractiveness, it is ultimately unpersuasive on at least two grounds. First, it would be fundamentally unfair in the face of the employee's opposition to force him to accept as his advocate in arbitration the very union that he alleged has unfairly represented and conspired against him. As the Fourth Circuit stated in *Lusk v. Eastern Products,* 427 F.2d 705, 708 (1970):

> Where an employee member of a union bases his case upon a conspiracy or an illegal combination between his union and his employer to deprive him of his rights he cannot be forced to submit that issue to arbitration between the employer and the union since such procedure would entrust representation of the complaining employee to the very union which he claims refused him fair representation and because it would present as adversaries in the arbitration proceeding the two parties charged by the employee with combining to defraud him. *Desrosiers v. American Cyanamid Co.,* 377 F.2d 864 (2d Cir. 1967); *Hiller v. Liquor Salesmen's Union Local No. 2,* 338 F.2d 778 (2d Cir. 1964); see *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), *supra.*

Arbitration as provided by the contract is essentially between the Union, as plaintiff's bargaining agent and Interstate, the employer. They are the two signatories of the collective bargaining agreement. Therefore, even if the plaintiff, represented by counsel, were allowed to participate in the arbitration hearing, as has occasionally been done, *see e. g., Hotel and Restaurant Employees and Bartenders Union v. Michelson's Food Services, Inc.,* 545 F.2d 1248 (9th Cir. 1976), he would still be at a very serious disadvantage should his allegations regarding the Union's conduct toward him prove to be true. Despite the employee's participation in the proceeding, if it were to the mutual advantage of both the official par-

**1314**

ties to the arbitration that a discharge for cause be shown, the chances that the employee's position would be vindicated, would appear very slim indeed.

A second reason for denying a stay in this action and for enjoining arbitration is the potential unfairness to the employer. If the arbitrator should find that the plaintiff was unjustly discharged, Interstate should bear the cost of this wrongful act. However, if the Union unfairly neglected to press this valid grievance for a period of seven months, clearly it bears some of the blame and should bear some of the cost.

But this is not to say that proof of breach of the Union's representation duty would render Anchor potentially liable for backpay accruing between the time of the "tainted" decision by the arbitration committee and a subsequent "untainted" determination that the discharges were, after all, wrongful.

If an employer relies in good faith on a favorable arbitral decision, then his failure to reinstate discharged employees cannot be anything but rightful, until there is a contrary determination. Liability for the intervening wage loss must fall not on the employer but on the Union. Such an apportionment of damages is mandated by *Vaca's* holding that "damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer." 386 U.S. at 197–198, 87 S.Ct. 903. To hold an employer liable for back wages for the period during which he rightfully refuses to rehire discharged employees would be to charge him with a contractual violation on the basis of conduct precisely in accord with the dictates of the collective agreement.

*Hines v. Anchor Motor Freight,* 424 U.S. 554, 572–73, 96 S.Ct. 1048, 1061, 47 L.Ed.2d 231 (1976) (Justice Stewart concurring).

Naturally, if Interstate fraudulently misled the Union, as the latter has contended, Interstate would be in no position to demand that the Union bear some of the loss. But of crucial importance here is that these issues are not subject to arbitration and if it were shown that the Union wrongfully failed to assert plaintiff's grievance under the contract, no award against the Union could be made and Interstate alone would be forced to pay the total cost. Although the Union has asserted in oral argument that the arbitrator could make an award for the employee against the Union, this proposition is extremely dubious.

> The dispute between Manning and the Union, however, is not within the scope of the collective bargaining agreement. The agreement is one between the Union as agent for employees and the employer not between the Union and the employees. There is not and cannot be a claim by Manning that the Union breached a duty created by the agreement. The duty of fair representation is created by the relationship of the Union to its members. *Nedd v. United Mine Workers of America,* 3 Cir. 1968, 400 F.2d 103, 105–06. "[A] party cannot be required to submit to arbitration any dispute that he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 582, 80 S.Ct. at 1353.

*Hotel, etc. v. Michelson's Food Services, Inc., supra* at 1251.

However, even if the Court were to accept the Union's argument that an award against it could be made by the arbitrator, it would again cast the integrity of the proceeding in serious doubt since the union in this posture would ostensibly be acting as an advocate against itself. It is extremely unlikely that the rights of the employee would be adequately protected in the face of such an obvious conflict of interests.

Since this Court has jurisdiction and is capable of affording full relief to all the parties, there is no reason why the plaintiff's claim should be fragmented, the grievance against the employer going to arbitration and the complaint against the Union waiting resolution here.

Although there is a general policy in favor of arbitration in labor disputes . . once courts take jurisdiction of a case, they should not be compelled to fragmentize it, deciding some of the issues and leaving others for disposition by an arbitrator. *Vaca v. Sipes, supra* at 196 of 386 U.S., at 919 of 87 S.Ct. (citation omitted)

*Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 876 (3d Cir. 1972).

It is clear that plaintiff's action in this Court should not be stayed. *Desrosiers v. American Cyanamid Co.,* 377 F.2d 864, 871 (2d Cir. 1967); *Hiller v. Liquor Salesmen's Union Local No. 2,* 338 F.2d 778 (2d Cir. 1964). Further, the arbitration now pending should be enjoined. The case cited by the Union for the contrary proposition, *Hotel etc. v. Michelson's Food Services, Inc., supra,* is distinguishable on its facts, and the Ninth Circuit, acknowledging how closely balanced the competing considerations there involved were, very carefully limited its holding to the peculiar facts presented to it. In any event, allowing both this action and the arbitration to go forward would create too great a potential for conflict and inconsistency of result to be seriously considered by the Court.

For the foregoing reasons, the Union's motion for a stay of this action is DENIED, and plaintiff's and Interstate's motions to enjoin arbitration of the wrongful discharge grievance are GRANTED.