[No. 14331-3-II.    Division Two.    January 25, 1993.]

HELEN M. MINTER, *Respondent*, v. PIERCE TRANSIT, *Petitioner.*

*Bruce L. Schroeder* and *Heller, Ehrman, White & McAuliffe,* for petitioner.

*James F. Imperiale* and *Griffin Imperiale Bobman & Verhey, P.S.,* for respondent.

PETRICH, J. — In this wrongful termination of employment suit initiated by Helen M. Minter against Pierce Transit,[1] her employer, Pierce Transit sought and this court accepted discretionary review of the trial court's denial of Pierce Transit's motion for summary judgment of dismissal. Pierce Transit contends that the arbitration procedure provided for in the collective bargaining agreement covering Minter's employment was the sole and exclusive remedy available to her.

The primary issue on appeal is whether a provision in the collective bargaining agreement, which provides that either taking a grievance appeal to arbitration or litigating the matter in court is an election of remedies and a waiver of alternative rights, overcomes the strong presumption that arbitration clauses provide the exclusive remedy in such agreements. We hold that the presumption was overcome and that arbitration was not the exclusive remedy available under the collective bargaining agreement. We affirm the trial court's denial of the motion for summary judgment.

Helen Minter worked full time as a bus driver for Pierce Transit and its predecessor from 1977 until 1988. In the 2 years prior to her dismissal, Minter had several accidents. On October 13, 1988, she was dismissed for violating safety rules, policies, and procedures.

---

[1] Pierce Transit's full corporate name is Pierce County Public Transportation Benefit Authority Corporation.

Minter, a member of the Amalgamated Transit Union, Local 758, requested the union to file a grievance on her behalf according to the terms of a collective bargaining agreement between the union and Pierce Transit. The committee hearing the grievance affirmed the termination.

Although never recanting its position that Minter's claim was meritorious, the union decided not to pursue Minter's case to arbitration, as authorized under article VIII(E) of the collective bargaining agreement. Minter then filed a complaint against Pierce Transit in Pierce County Superior Court for wrongful termination, basing her action on a provision in the collective bargaining agreement that provides that no employee will be dismissed except for cause. She did not contend that the union breached its duty of fair representation.

The trial court denied Pierce Transit's motion for summary judgment, rejecting its argument that article VIII[2] of the collective bargaining agreement made arbitration the exclusive remedy available to Minter. The specific provision at issue is article VIII(E)(10), which reads:

> It is specifically and expressly understood and agreed that taking a grievance appeal to arbitration constitutes an election of remedies and a waiver of any and all rights by the appealing employee, the Union, and all persons it represents to litigate or otherwise contest the appealed subject matter in any court or other available forum. Likewise, litigation or other contest of the subject matter of the grievance in any court or other available forum shall constitute an election of remedies and a waiver of the right to arbitrate the matter.

Pierce Transit asserts several reasons why this provision must be read to mean that arbitration is the exclusive remedy available to Minter under the collective bargaining agreement. It argues that contractual remedies under the collective bargaining agreement are ultimately subject to arbitration as the exclusive remedy of the parties. The election of remedies paragraph of the agreement, it contends, applies only to statutory causes of action, such as discrimination claims under state or federal law. *See Alexander v. Gardner-Denver Co.*, 415

---

[2]Pertinent portions of article VIII appear as an appendix to this opinion.

U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974) (contractual grievance and arbitration procedures provide an inadequate forum for enforcing statutory rights granted to individuals); *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 577-78, 731 P.2d 497 (1987) (statutory scheme in the State's antidiscrimination law evidences the Legislature's intent to allow individual employees to pursue their statutory rights independently from the remedies of a collective bargaining agreement), *overruled on other grounds in Phillips v. Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989). Such an interpretation, according to Pierce Transit, is mandated because of the strong presumption that grievance and arbitration procedures provide the exclusive remedy for resolving contractual disputes in labor agreements, and because such was intended as demonstrated by extrinsic evidence of the negotiations leading up to the contract and by the plain reading of the contract. We disagree.

### PRESUMPTION OF EXCLUSIVITY

According to Pierce Transit, the trial court erred in ignoring the well-established presumption that a labor contract's grievance and arbitration procedure is the exclusive remedy available to a party subject to its terms. Pierce Transit cites a number of federal and state cases illustrating the nature and scope of this presumption.

The seminal case is *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 13 L. Ed. 2d 580, 85 S. Ct. 614 (1965), in which the United States Supreme Court considered a case where a former employee successfully sued in state court for severance pay against an employer where both the employer and the employee were subject to a collective bargaining agreement. The Court held that where a collective bargaining agreement has provisions for grievances, "unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf." (Footnote omitted.) *Republic*, at 653. While *Republic* did in fact establish that arbitration clauses are presumed to be exclusive, the *Republic* Court also stated that the em-

ployee's suit would not be precluded if the parties to the collective bargaining agreement expressly agreed that arbitration was not the exclusive remedy. *Republic*, at 657-58.

Similarly, in *Wyatt v. Interstate & Ocean Transp. Co.*, 439 F. Supp. 1310 (E.D. Va. 1977), the court acknowledged a presumption that arbitration clauses are exclusive of other remedies: "contract grievance procedures including arbitration must, unless specified as nonexclusive, be exhausted before direct legal redress is sought." *Wyatt*, at 1312. The *Wyatt* court, however, recognized that where the union failed to pursue the employee's grievance, the employee was free to pursue an independent action against the employer and the union apart from the grievance procedures called for under the collective bargaining agreement. *Wyatt*, at 1311.

Washington courts also recognize this presumption. In *Lew v. Seattle Sch. Dist. 1*, 47 Wn. App. 575, 736 P.2d 690 (1987), a high school counselor filed a grievance and followed the first three steps of a 4-step grievance procedure. However, upon reaching the final step, which called for the Seattle Teachers Association to submit the grievance to binding arbitration on behalf of the aggrieved teacher, the association refused to submit the grievance to arbitration. *Lew*, at 576. The *Lew* court set out the general rule regarding grievance procedures:

> [W]here a collective bargaining agreement establishes grievance and arbitration procedures for the redress of employee grievances, an employee must exhaust those procedures before resorting to judicial remedies. However, federal and state courts have held that an employee's failure to exhaust contractual grievance procedures does not bar an action by the employee for breach of contract if the employee has been prevented from exhausting his or her contractual remedy by his or her union's wrongful refusal to process the grievance.

(Citations omitted.) *Lew*, at 577-78. However, the *Lew* court held that in order to maintain such an action, the employee must also join the union in the complaint and allege that the union acted arbitrarily, discriminatorily, or in bad faith in failing to exhaust the grievance procedures. *Lew*, at 578.

In the cases Pierce Transit relies upon, the union was the sole agent of the employee under the collective bargain-

ing agreement, and there was no provision for any other type of remedy under the agreement. Here, however, the collective bargaining agreement provides for an alternate course of relief apart from arbitration, and this course of relief is not waived until the grievance is taken to arbitration.

Article VIII(E)(1) provides that if a grievance cannot be amicably settled in accordance with the outlined procedures, the grievance "*may* be submitted to arbitration." (Italics ours.) In the absence of any contradictory language, arbitration is the exclusive remedy. However, article VIII(E)(10) specifically and expressly provides that "litigation or other contest of the *subject matter of the grievance* in any court or other available forum shall constitute an election of remedies and a waiver of the right to arbitrate the matter." (Italics ours.) A "grievance" is narrowly defined in article VIII(B) as a "claim by an employee that the *terms of this Agreement* have been violated, or that a dispute exists concerning the *proper application or interpretation* of this Agreement." (Italics ours.) A grievance under the contract does not embrace a statutory violation of an employee's rights. The election of remedies provision clearly gives Minter the option of litigating in court her claim that the collective bargaining agreement has been violated. This provision overcomes the strong presumption of arbitrability as the exclusive remedy because it satisfies the requirement of an express agreement.

EXTRINSIC EVIDENCE

Pierce Transit contends that extrinsic evidence supports its contention that the parties to the collective bargaining agreement intended that the election of remedies was to apply only to statutory causes of action, such as discrimination claims, and not to wrongful termination actions.

■ The Washington Supreme Court in *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990) held that "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." *Berg*, at 667. The *Berg* court articulated the "context" rule:

Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed. Evidence of this character is admitted for the purpose of aiding in the interpretation of what is in the instrument, and not for the purpose of showing intention independent of the instrument.

*Berg*, at 669 (quoting *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944)).

In *Olympia Police Guild v. Olympia*, 60 Wn. App. 556, 805 P.2d 245 (1991), the court applied the context rule to a collective bargaining agreement, recognizing that "[e]xtrinsic evidence may be admitted to aid in the interpretation of an unambiguous agreement". *Police Guild*, at 559. However, the court defined the type of extrinsic evidence that could be used to ascertain the intent of parties:

[T]he intent of the parties to be divined by application of the context rule has to do with their real meeting of the minds, as opposed to the insufficient written expression of their intent. Unilateral and subjective beliefs about the impact of a written contract do not represent the intent of the parties.

*Police Guild*, at 559. The court held that the summary judgment record, which included only "unilateral" views of the intent of the parties, did not show any meeting of the minds inconsistent with the plain words of the collective bargaining agreement; therefore, the extrinsic evidence could not be used as an aid in interpreting the terms of the agreement. *Police Guild*, at 559 n.2.

Here, the record in front of the trial court included the declaration of Larry Yok, the director of finance and administration for Pierce Transit at the time the collective bargaining agreement was negotiated. Like the declarations in *Police Guild*, Yok's declaration only shows the unilateral view of the intent of the Pierce Transit negotiators and fails to show any meeting of the minds inconsistent with the words of the collective bargaining agreement.

The only other documents in front of the trial court evidencing the intent of those negotiating the collective bargaining agreement were the notes of the December 23, 1983,

meeting, at which the grievance portion of the collective bargaining agreement was negotiated by representatives from Pierce Transit, including Larry Yok, and representatives from the union. The notes only indicate that there was a dispute over the provisions limiting the ability of employees to seek relief in courts, and do not indicate how or if this dispute was resolved.

We conclude that there was no extrinsic evidence in front of the trial court evidencing a meeting of the minds of the parties to the collective bargaining agreement. Rather, the materials submitted by Pierce Transit provide only a "unilateral" view of intent and, at best, evidence the existence of a dispute over the contractual provisions at issue here.

### FOUR CORNERS OF AGREEMENT

■ Pierce Transit also argues that, looking only within the four corners of the agreement, the arbitration provisions of the collective bargaining agreement are still clearly exclusive. Specifically, Pierce Transit claims that since the agreement sets out that "grievances shall be processed in accordance with the following procedures", the arbitration clause following that phrase is also mandatory and exclusive. Pierce Transit also argues that the language "shall be handled in the following manner" was intended to make the arbitration clause exclusive and mandatory. These contentions are without merit. Reading the contract as a whole, we conclude that these phrases refer to the grievance procedures prior to arbitration, not to the arbitration procedure itself. *See Logan v. Logan*, 36 Wn. App. 411, 420, 675 P.2d 1242 (1984).

Pierce Transit's contention that the trial court's interpretation of article VIII(E)(10) contradicts the mandatory language contained in these sentences pertaining to grievance procedures is similarly deficient. The mandatory language specifically refers to the grievance procedures, and the elective language of article VIII(E)(10) specifically refers to arbitration.

Pierce Transit also argues that this interpretation of the arbitration provision of the collective bargaining agreement

negates the provision designating the union as the exclusive representative. According to this argument, there is now the risk of 400 nonexclusive bargaining representatives, each of which can file suit against Pierce Transit for breach of contract for any grievance. This argument is meritless. The grievance provision of the collective bargaining agreement is still exclusive. It is only after an aggrieved worker has gone through the three steps of the grievance procedure, which are mandatory, that he or she may elect to either allow the union to take the case to arbitration or independently bring a separate action. It is only in cases such as Minter's where the grievance has gone past the grievance stage and the union refuses to pursue arbitration, that such an election will take place.

Accordingly, we affirm the trial court's denial of Pierce Transit's motion for summary judgment.

## APPENDIX

### ARTICLE VIII—GRIEVANCE PROCEDURE

A. The purpose of this procedure is to provide an orderly method for resolving grievances. A determined effort shall be made to settle any such differences at the lowest possible level in the grievance procedure. It is understood that there shall be no suspension of work, slowdown, or curtailment of services while any difference is in process of adjustment or arbitration pursuant to the terms of this Agreement.

B. A "Grievance," as is used in this Agreement, means a claim by an employee that the terms of this Agreement have been violated, or that a dispute exists concerning the proper application or interpretation of this Agreement. Grievances shall be processed in accordance with the following procedures within the stated time limits.

C. Steps in the grievance procedure for disputes involving contract interpretations:

. . . .

D. In the event that a grievance arises that involves disciplinary action, it shall be handled in the following manner:

. . . .

E. Arbitration Procedure:

1. In the event that any grievance, dispute, or controversy, including disciplinary action, cannot be amicably adjusted in accordance

with the provision of the grievance procedures defined in sections C and D of this Article, it may be submitted to arbitration. Either party shall give notice of its intention to arbitrate as required in the applicable step. A list of nine (9) arbitrators shall be requested from the Federal Mediation and Conciliation Service. Both parties shall meet and each shall strike a name, until one (1) arbitrator is selected.

2. The Union and the Employer both agree that the submission of a case to arbitration shall be based on the original written grievance submitted following the grievance procedure in Sections C and D of this Article, and shall contain the nature of the grievance; act or acts grieved; date of occurrence; actual work performed; identity of employee or employees who claim to be aggrieved; provisions, if any, of this Agreement that the Employer has violated; and remedy sought.

. . . .

10. It is specifically and expressly understood and agreed that taking a grievance appeal to arbitration constitutes an election of remedies and a waiver of any and all rights by the appealing employee, the Union, and all persons it represents to litigate or otherwise contest the appealed subject matter in any court or other available forum. Likewise, litigation or other contest of the subject matter of the grievance in any court or other available forum shall constitute an election of remedies and a waiver of the right to arbitrate the matter.

11. No issue whatsoever shall be arbitrated or subject to arbitration unless such issue results from an action or occurrence which takes place following the execution date of this Agreement, and no arbitration determination or award shall be made by the arbitrator which grants any right or relief for any period of time whatsoever prior to the execution date of this Agreement. In case of a grievance involving any continuing or other monetary claim against the Employer, no award shall be made by the arbitrator which shall allow any alleged accruals for more than one hundred eighty (180) calendar days prior to the date when such grievance shall have first been presented.

ALEXANDER, C.J., and MORGAN, J., concur.

Review denied at 121 Wn.2d 1023 (1993).