[No. 38341-1-II.   Division Two.   February 2, 2010.]

INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 23, *Appellant*, v. THE PORT OF TACOMA, *Respondent*.

*Lawrence R. Schwerin* (of *Schwerin Campbell Barnard Iglitzin & Lavitt LLP*), for appellant.

*J. Markham Marshall* and *Barry N. Mesher* (of *Lane Powell PC*), for respondent.

¶1 PENOYAR, A.C.J. — The question before us is whether the superior court properly dismissed an action to enforce an arbitration award under CR 12(b)(1) for lack of jurisdiction. The superior court had inherent jurisdiction over the civil action and we remand for the superior court to consider that matter. At the same time, we find that the Public Employment Relations Commission (PERC) had exclusive decision-making authority over which union rightfully performed the disputed work. Thus, we reverse and remand for the superior court to determine what, if any, other relief International Longshore and Warehouse Union (ILWU), Local 23 may be entitled to under the arbitration award.

## FACTS

¶2 Beginning in the 1970s, the Port of Tacoma (Port) had a collective bargaining relationship with Local 23. At that time, Local 23 represented both private and public sector employees working in port facilities. Private sector employees worked under the terms of a collective bargaining agreement with the Pacific Maritime Association (PMA) (referred to as the Longshore Division). Public employees held specific work classifications (referred to as the Port Workers Division).

¶3 In March 2006, with Local 23's consent, the Port Workers Division created a new ILWU division called Local 22. Two work classifications are important here. First, the marine clerks are private sector employees who work under

the PMA and are part of Local 23. Second, the railcar coordinators are historically public sector employees of the Port Workers Division and are part of Local 22.

¶4 Railcar coordinators plan the sequence of off-loading containers from ocean-going vessels to rail cars. There are four such coordinator positions and they operate in the Port's North Intermodal Tower. In 2004, the Port implemented a computerized program (known as Spinnaker) to simplify this process.

¶5 Once the railcar coordinators develop a plan for the sequence and loading patterns for the freight trains leaving the Port, they forward the plan to the marine clerks to implement the loading scheme. While marine clerks have discretion to make minor adjustments to the plan, they do not have authority to modify the general loading order.

¶6 The Port's collective bargaining agreement with Local 23 requires it to abide by the Pacific Coast Longshore Contract Document and the Pacific Coast Clerks Contract Document (PCCCD). According to Local 23, section VI(A)(4)(e)(ii) of the PCCCD Technology Framework assigns rail planning work to the marine clerks as a quid pro quo in 2002 bargaining. That section provided:

> In exchange for the employers' right to introduce new technologies, the following work and functions shall be assigned to marine clerks at all facilities covered by the PCCCD.
>
> Rail Planning Operations. Marine clerks shall be assigned rail planner duties and functions generally identified as directing and executing the flow of cargo, planning and determining the particular place or area on a railcar where cargo is to be placed or relocated and involving the preparation, confirmation, distribution and reconciliation of all documents required by the employer for such work, including the input of data or the utilization of computer programs. It is understood that the practice of direction of supervisors by management is recognized and shall not be disturbed.

Clerk's Papers (CP) at 142.

¶7 When the Port and Local 23 could not resolve Local 23's claim to the railcar coordinator positions, Local 23

invoked the arbitration provision in the PCCCD. On February 27, 2008, before the formal arbitration hearing took place, the Port filed a petition with the PERC concerning the bargaining unit status of railcar coordinators. Following an April 15, 2008 hearing in which the Port, Local 22, and Local 23 participated, the PERC made, among other findings, the following:

> 4. The position of railcar coordinator is part of a bargaining unit of Port of Tacoma employees represented by Local 22.
>
> . . . .
>
> 6. International Longshore and Warehouse Union, Local 23 does not have any factual claim on the work being performed by railcar coordinators in the bargaining unit represented by International Longshore and Warehouse Union, Local 22.

CP at 99-100. The PERC concluded:

> 3. The position of railcar coordinator is appropriately within to [sic] the existing bargaining unit of Port of Tacoma employees represented by International Longshore and Warehouse Union, Local 22, and the railcar coordinator position must retain the duties it has historically performed.
>
> 4. There is no question concerning representation in the bargaining unit of Port of Tacoma employees represented by International Longshore and Warehouse Union, Local 22, since Local 22 already represents the railcar coordinators, and their work remains in Local 22's unit.

CP at 100.

¶8 In the arbitration proceedings, the Port requested that the arbitrator not proceed until the PERC had made its decision. The arbitrator declined and, on March 31, 2008, decided:

> This Arbitrator's jurisdiction is limited to the PCCCD and all parties bound by it. Any other dispute must be resolved in another arena.
>
> . . . .
>
> All the items contained in Union Exhibit No. 2 is work ceded to marine clerks in the 2002-2008 PCCCD and shall be assigned

immediately by the Port of Tacoma to ILWU Local 23 Marine Clerks.

CP at 142-43 (italics omitted).

¶9 On April 18, 2008, the arbitrator held a nonimplementation hearing because the Port refused to implement the arbitration award. CP 146. The arbitrator ruled:

> It is crystal clear the Port of Tacoma has gone and continues to go to great lengths to avoid implementing the March 31, 2008 Award. Therefore, the Port of Tacoma shall pay one Marine Clerk Supervisor per shift for each shift starting April 18, 2008 the Port of Tacoma has conducted rail operations at their North Intermodal Yard until they implement the Award as written.

CP at 147 (italics omitted).

¶10 On June 30, 2008, Local 23 filed a complaint to enforce and confirm the arbitration award in superior court. The Port filed a motion to dismiss under CR 12(b)(1) and for attorney fees and costs. The superior court granted Local 22's motion to intervene. Local 22 then joined in the Port's motion to dismiss. On August 22, the superior court granted the motion to dismiss and granted attorney fees and costs to the Port.

¶11 Local 23 appeals.

## ANALYSIS

I. STANDARD OF REVIEW

■ ■ ¶12 CR 12(b)(1) allows the superior court to dismiss an action on the pleadings for lack of subject matter jurisdiction. We review such a decision de novo. *Local Union I-369, Oil, Chem. & Atomic Workers Int'l Union v. Sandvik Special Metals Corp.*, 102 Wn. App. 764, 770, 10 P.3d 470 (2000).

II. LOCAL 23

¶13 Local 23 argues that the superior court erred in dismissing its cause of action for lack of jurisdiction. It

notes that courts routinely assert jurisdiction in disputes involving public entities and collective bargaining agreements (citing *Minter v. Pierce Transit,* 68 Wn. App. 528, 843 P.2d 1128 (1993) (collective bargaining agreement allowed employee to elect to pursue judicial remedies rather than arbitration)). More specifically, Local 23 notes that superior courts have specifically asserted jurisdiction to review challenges to labor arbitration awards involving public entities under the constitutional right of certiorari (citing *Clark Cnty. Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers, Local 125,* 150 Wn.2d 237, 245, 76 P.3d 248 (2003) (scope of review is deciding whether arbitrator acted illegally by exceeding his authority under the contract); *Wright v. Terrell,* 135 Wn. App. 722, 729, 145 P.3d 1230 (2006) (superior court and the PERC have original jurisdiction to hear unfair labor practice charges)).

¶14 Local 23 argues that this is a breach of contract claim against the Port to enforce the PCCCD. As the contract requires, it first sought arbitration. Now, as appropriate, it is seeking enforcement of that award in superior court. It argues that when the Port agreed to include an arbitration clause in the PCCCD contract, the Port agreed to use the arbitration process for resolving disputes under the collective bargaining agreement. It argues that the Port cannot circumvent the contract "by ignoring the arbitrator's decision and seeking refuge at the PERC, especially when the PERC decision does not even address the breach of contract claim." Appellant's Br. at 9. Finally, it argues, that if the Port finds fault with the arbitrator's decision, it had an obligation to make that argument to the superior court.

¶15 Local 23 also notes that because the PERC has no authority to interpret collective bargaining agreements or to address violations of those agreements, the only mechanism to enforce an arbitration award is through the superior court.

¶16 Analogizing to *W.R. Grace & Co. v. Local Union 759, International Union of United Rubber, Cork, Linoleum, & Plastic Workers of America,* 461 U.S. 757, 103 S. Ct. 2177,

76 L. Ed. 2d 298 (1983), Local 23 argues that, notwithstanding the Port's obligations to Local 22, the Port is liable for violating the collective bargaining agreement. W.R. Grace argued that it had two competing requirements, one under its collective bargaining agreement and another under a consent decree it had with the Equal Employment Opportunity Commission. The Supreme Court observed:

> By entering into the conflicting conciliation agreement, by seeking a court order to excuse it from performing the collective-bargaining agreement, and by subsequently acting on its mistaken interpretation of its contractual obligations, the Company attempted to shift the loss to its male employees, who shared no responsibility for the sex discrimination. The Company voluntarily assumed its obligations under the collective-bargaining agreement and the arbitrator's interpretations of it. No public policy is violated by holding the Company to those obligations, which bar the Company's attempted reallocation of the burden.

461 U.S. at 770.

¶17 Local 23 argues that, like the union in *W.R. Grace*, it was party to a lawful collective bargaining agreement with the Port. While the Port may have conflicting obligations to Local 22 and Local 23, the PERC's decision that Local 22 prevailed on the representation issue did not deprive the superior court of jurisdiction to consider Local 23's contract claim against the Port. Local 23 argues that when the Port entered into its contract with Local 23, it bore the risk of loss if it assigned work to workers outside the bargaining unit.[1]

III. PORT OF TACOMA

¶18 The Port characterizes the dispute as one involving competing claims by unions over work assignments. Such claims, it notes, fall under the PERC's exclusive jurisdiction: "Controversies as to the choice of employee organiza-

---

[1] The Port responds that it was never a signatory to the PCCCD. Rather, the Port signed a one-page agreement in 1990 in which it agreed to apply terms of the PMA contract when it hires longshore workers.

tion within a port shall be submitted to the public employment relations commission." RCW 53.18.030. The Port cites several PERC decisions where the PERC rejected unions' arguments that an arbitrator should decide competing representation claims. In those decisions, the PERC expressed its view that only it had authority to resolve disputes concerning the scope of bargaining units and the allocation of positions when more than one bargaining unit had a colorable claim to those positions. *See Seattle/King Cnty. Bldg. & Constr. Trades Council v. Seattle Sch. Dist.*, No. 5220 (Pub. Emp't Relations Comm'n (PECB) Wash. Aug. 10, 1995); *Port of Seattle v. ILWU, Local 9*, No. 6181 (PECB Wash. Feb. 9, 1998).

¶19 The Port analogizes to *ILWU, Local 32 v. PMA*, 773 F.2d 1012 (9th Cir. 1985). There, the union sued in federal court to enforce an arbitration award to collect "time-in-lieu" payments for longshore work. The Ninth Circuit affirmed the district court's dismissal of the union's suit, holding that the arbitrator lacked authority to make an award inconsistent with an administrative agency decision where the agency had jurisdiction to resolve competing union work claims. The Ninth Circuit then noted that the district court lacked authority to enforce a private agreement that conflicted with public policy. 773 F.2d at 1020-21 (quoting *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83-84, 102 S. Ct. 851, 70 L. Ed. 2d 833 (1982) (quoting *Hurd v. Hodge*, 334 U.S. 24, 34-35, 68 S. Ct. 847, 92 L. Ed. 1187 (1948))).

¶20 The Port concludes that because the PERC has decided that Local 22, and not Local 23, represents the railcar coordinators, enforcing the arbitration award against the Port would be contrary to the administrative agency (PERC) decision that had jurisdiction over the representation claim. Thus, the Port concludes that the superior court properly dismissed for lack of subject matter jurisdiction.

¶21 The Port seeks to distinguish *W.R. Grace* because, unlike in *W.R. Grace*, a duly authorized administrative agency has ruled and strong public policy dictates that

administrative orders should be obeyed. That agency ruling found that Local 23 had no "factual claim on the work being performed by railcar coordinators in the bargaining unit represented by Local 22." CP at 100.

## IV. LOCAL 22

¶22 Local 22 joins the Port's arguments that (1) the legislature delegated to the PERC the obligation to address questions of which employees should perform certain work, (2) the PERC precedent establishes that the PERC has jurisdiction to address competing union claims for work, and (3) the superior court properly dismissed Local 23's action for lack of subject matter jurisdiction.

¶23 Additionally, Local 22 claims that enforcing the arbitrator's decision would violate public policy (citing *Kitsap Cnty. Deputy Sheriff's Guild v. Kitsap County*, 140 Wn. App. 516, 524-26, 165 P.3d 1266 (2007) (court may not enforce collective bargaining agreement that is contrary to public policy, citing *W.R. Grace), rev'd*, 167 Wn.2d 428, 219 P.3d 675 (2009)). Local 22 finds the " 'explicit,' 'well-defined,' and 'dominant public policy' "[2] in RCW 41.56.010, which applies to the Port and its employees through RCW 53.18.015:

> The intent and purpose of this chapter is to promote the continued improvement of the relationship between public employers and their employees by providing a uniform basis for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers.

RCW 41.56.010.

¶24 Under WAC 391-35-020(1)(b), the PERC handles "[d]isputes concerning the allocation of employees or positions claimed by two or more bargaining units." The PERC

---

[2] *Kitsap Cnty. Sheriff's Guild*, 167 Wn.2d at 435 (internal quotation marks omitted) (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000)).

is to handle all unit clarification disputes "under all chapters of the Revised Code of Washington (RCW) administered by the commission." WAC 391-35-001. Thus, it is strong public policy that the PERC handle all unit clarification disputes on a uniform basis.

¶25 Local 22 argues alternatively that the doctrine of unconscionability also bars enforcement of the arbitrator's award (citing *Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 457, 45 P.3d 594 (2002) (arbitration clause unenforceable where costs of arbitration were prohibitive)). Local 22 argues that the arbitration award is unconscionable because Local 23 obtained the award without Local 22's participation and the arbitrator refused to abide by the PERC's decision. Enforcing the award, it argues, would injure a nonparty to the arbitration and thus it is unconscionable and unenforceable.

## V. DECISION

¶26 This is largely a representation dispute. Local 23 claims that the Port agreed to transfer the railcar coordinators into its union membership. The Port, though, has conflicting obligations to both Local 22 and Local 23. When faced with deciding whether to displace Local 22 members, the Port sought a PERC decision over which union properly represented the railcar coordinators. Notably, both Local 22 and Local 23 participated in the PERC proceedings. The PERC, after careful consideration, likewise concluded that this was a representation issue. We find no fault in that decision.

¶27 We find *W.R. Grace* distinguishable because there the court found an arbitration award enforceable because the company had created its own dilemma, enforcement would not violate public policy, and, in fact, enforcement would promote public policy. While the Port similarly faced a dilemma of displacing Local 22 workers or following the collective bargaining agreement and transferring the railcar coordinator positions to Local 23, the PERC order resolved its dilemma and prevented enforcement of the collective bargaining agreement.

■ ¶28 Though the PERC had the exclusive authority to decide the representation issue and we find *W.R. Grace* distinguishable, the superior court nevertheless had jurisdiction to act in this case. Here, Local 23 invoked the superior court's jurisdiction over it, Local 22, and the Port. Certainly, the superior court has jurisdiction to enforce an arbitration award and the superior court should not have dismissed this cause on jurisdictional grounds. *See* WASH. CONST. art. IV, § 6 ("The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court."); *see also Silver Surprize, Inc. v. Sunshine Mining Co.*, 74 Wn.2d 519, 523, 445 P.2d 334 (1968) ("Of course, a plaintiff frequently seeks more than the law permits, but that in itself does not destroy jurisdiction; it merely limits the effective relief the court can properly grant." (citing *Monongahela Power Co. v. Shackelford*, 142 W. Va. 760, 98 S.E.2d 722 (1957))).

¶29 We remand this case for the superior court to exercise its jurisdiction. As stated, the PERC decision binds the parties on the representation claim and Local 23 may not claim relief under the theory advanced in *W.R. Grace*. The superior court must decide if that leaves Local 23 with any relief under the arbitration award.

VI. ATTORNEY FEES

■ ¶30 The Port requests its attorney fees and costs on appeal under RAP 18.9 for having to respond to a frivolous appeal. It contends that Local 23 has no colorable claim, that it never appealed the PERC's adverse decision, that the superior court dismissed because only the PERC had jurisdiction to decide which union represents the railcar coordinators, and now, on appeal, it ignores the PERC's decision by asking us to enforce the arbitration decision.

¶31 This is clearly not a frivolous appeal. The superior court's dismissal for lack of subject matter jurisdiction was a questionable decision. Local 23 had a favorable arbitration award and the right to pursue its enforcement. That

the PERC decision made its award unenforceable does not render its appeal frivolous. We decline the Port's fee request.

¶32 We reverse and remand for the superior court to determine what, if any, other relief Local 23 may be entitled to under the arbitration award.

HUNT, J., concurs.

¶33 QUINN-BRINTNALL, J. (dissenting) — I agree with the majority that the Public Employment Relations Commission had exclusive authority to decide this representation dispute. But I respectfully dissent from the portion of the majority's opinion holding that the superior court improperly granted the Port of Tacoma (Port) and International Longshore and Warehouse Union (ILWU) Local 22's motion to dismiss and that we must remand this case back to the superior court to determine whether ILWU Local 23 has any additional avenue of relief to enforce the arbitration award. In my opinion, Local 23's claim is frivolous and should have been dismissed under CR 12(b)(6) for failure to state a claim upon which relief can be granted. After Local 23 released its representation of railcar coordinator positions to Local 22, it tried to appropriate the work performed by those employees. The superior court properly dismissed Local 23's attempt to enforce the arbitration award because no circumstances exist that would allow Local 23 to release railcar coordinator positions to Local 22 and retain the right to require the Port to continue paying Local 23 for work Local 22 members now perform. Accordingly, I would affirm the superior court's dismissal order. Moreover, I would award the Port costs and attorney fees under RAP 18.9 for having to defend Local 23's frivolous appeal.