[No. 38868-1-I.   Division One.   September 22, 1997.]
DARRYL WILSON, ET AL., *Appellants*, v. THE CITY OF MONROE, *Respondent*.

*Brian C. Dale* of *Deno Millikan Dale & Decker*, for appellants.

*Deborah D. Brookings* of *Keating, Bucklin & McCormack, P.S.*, for respondent.

BAKER, C.J. — The right to be free from wrongful termination in contravention of public policy is independent of any underlying contractual agreement between employee and employer. When an employee brings a claim against an employer based on nonnegotiable, substantive rights that are not dependent on a collective bargaining agreement (CBA), the employee is not first required to exhaust the remedies provided by a CBA arbitration clause.

Recognizing the independent nature of the wrongful termination tort, we hold that summary judgment dismissal of Darryl Wilson's retaliatory discharge claims against his former employer, the City of Monroe, based upon failure to exhaust the remedies provided to him under the applicable CBA, was improper. We also hold that the tort cause of action for termination in contravention of public policy is not confined to at-will employment situations, but is available to all employees because the

tort embodies a strong state interest in protecting against violations of public policy.

Lastly, we hold that the statutory and City policy remedies available to Wilson are neither mandatory nor exclusive remedies. Therefore, we reverse the summary judgment dismissal of Wilson's claims against the City and remand for a trial on the merits.

## FACTS

Wilson, a union member, was employed by the City of Monroe as a plant operator at its waste water treatment facility. Under the union's CBA with the City, the City cannot discharge or suspend a union employee without just cause. The CBA's grievance procedure provides: "All matters pertaining to the proper application and interpretation of any and all of the provisions of this Agreement, and/or any other issues in dispute between the parties" shall be resolved through the grievance procedure, including arbitration. The decision of the arbitrator is final and binding on all parties.

According to Wilson, throughout his employment with the City he was instructed to recirculate sewage sludge through the plant, resulting in illegal discharges into the Skykomish River. Wilson complained to the Washington State Department of Ecology and the United States Environmental Protection Agency. Wilson also claims that requests to his employer for standard safety equipment were denied.

The City terminated Wilson's employment for alleged poor performance, and informed him that he was entitled to pursue a grievance against the City pursuant to the CBA. Wilson asked his union representative to file a grievance on his behalf. He also filed a complaint with the City pursuant to City Policy #92-39, alleging retaliation for his whistleblowing activities. The City contacted the State Office of Administrative Hearings, and the matter was assigned to an administrative law judge. The union put the

grievance process on hold pending outcome of the administrative hearing regarding Wilson's retaliation charge.

Wilson later dismissed his administrative claim, indicating a desire to pursue his remedies in Superior Court, including a claim for damages he asserted would not have been allowed in the administrative action. The union did not pursue Wilson's grievance.

Wilson filed suit against the City, alleging termination motivated by retaliation against him for inquiring and complaining about plant operations and for requesting safety equipment. Wilson appeals summary judgment entered in favor of the City.

# I

Although federal labor law generally requires employees to seek redress for grievances through arbitration if there is an applicable CBA providing for such dispute resolution, not all employment grievances must be arbitrated under the CBA.[1] Federal labor policy "does not preempt claims that are based on state laws when those laws grant employees nonnegotiable, substantive rights and when adjudication of those rights does not depend upon a collective bargaining agreement."[2]

Wilson's right to be free from wrongful termination in contravention of public policy may not be altered or waived by private agreement, and is therefore a nonnego-

---

[1]*United Food & Commercial Workers Union Local 1001 v. Mutual Benefit Life Ins. Co.*, 84 Wn. App. 47, 50-51, 925 P.2d 212 (1996).

[2]*United Food*, 84 Wn. App. at 51 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 122-25, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994), and *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408-09, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988) and *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985)); *see also Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 129-32, 839 P.2d 314 (1992) (noting two divergent "models" for using the *Lingle* preemption test, and adopting the model that tests the independence of the state law right by examining whether the claim could have been brought in the absence of the CBA, and noting that court had not previously assigned labels of "negotiability" or "nonnegotiability" to causes of actions, but that racial discrimination is in the nature of a nonnegotiable claim).

tiable right.[3] Furthermore, the right does not originate in the CBA provision that requires just cause for termination, or depend on interpretation of the CBA—the right is independent of any contractual agreement between Wilson and the City.[4] This is true even though resolution of the dispute may require examination of the same set of facts as would arbitration under the CBA.[5] Any attempt on the part of the City to show nonretaliatory reasons for Wilson's discharge would be a purely factual inquiry that does not turn on the meaning of any CBA provision.[6]

We also note that the CBA provision that arbitration applies not only to matters "pertaining to the proper application and interpretation" of the agreement, but also to "any other issues in dispute between the parties" does not alter the independent status of Wilson's claim based on the nonnegotiable right to be free from retaliatory discharge.[7]

We reject the City's argument that because Wilson's claims are founded on an allegation of unfair discharge,

---

[3]*See United Food*, 84 Wn. App. at 51 (rights established by state law are nonnegotiable when state law does not permit them to be "waived, alienated, or altered by private agreement") (citing *Miller v. AT&T Network Sys.*, 850 F.2d 543, 546 (9th Cir. 1988)); *see also Eldridge v. Felec Servs., Inc.*, 920 F.2d 1434, 1438 (9th Cir. 1990) (characterizing the right not to be discharged in retaliation for filing a workers' compensation claim as a nonnegotiable right).

[4]*See Lingle*, 486 U.S. at 401, 407 (employee covered by a CBA that provided a contractual remedy for discharge without just cause may enforce a state law tort remedy for retaliatory discharge because none of the elements of the tort require the court to interpret the CBA; state law remedy is independent and thus not preempted by federal law); *see also Bruce v. Northwest Metal Prods. Co.*, 79 Wn. App. 505, 513, 903 P.2d 506 (1995) (disability discrimination claim arises out of statute and is not preempted by any contractual or CBA requirements or remedies) (citing *Commodore*, 120 Wn.2d at 128-33), *review denied*, 129 Wn.2d 1014 (1996).

[5]*See United Food*, 84 Wn. App. at 53 (citing *Lingle*, 486 U.S. at 408-10 and *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) and *Luek*, 471 U.S. at 213-16).

[6]*See Lingle*, 486 U.S. at 407.

[7]*See Morales v. Westinghouse Hanford Co.*, 73 Wn. App. 367, 368-71, 869 P.2d 120 (similar all-inclusive language in grievance provision of CBA did not alter conclusion that action for discrimination pursuant to RCW 49.60 was independent of any remedy provided for in the CBA), *review denied*, 124 Wn.2d 1019 (1994).

resolution lies in arbitration. Cases that address employee grievances that do not involve separate pronouncements of state law are distinguishable from Wilson's claim.[8] In such cases, arbitration is generally the exclusive remedy available to an employee, unless the union wrongfully failed to pursue the employee's grievance, in which case the employee must also join the union in the complaint.[9]

We hold that because Wilson's wrongful termination/retaliatory discharge claims are based on nonnegotiable rights established by state law,[10] and because the claims may be resolved without interpreting the CBA, the claims are not preempted by federal labor law. Wilson was not required to exhaust the remedies provided him under the CBA before bringing his claims, and summary judgment dismissal of his claims for this reason was improper.[11]

## II

The right to be free from wrongful termination is independent of any contractual agreement between Wilson and the City. Because this is true, we reject the argument that the tort cause of action for wrongful discharge in contravention of public policy, established in *Thompson v. St. Regis Paper Co.*,[12] applies only to at-will employees.

■■ The United States Supreme Court has disapproved of state "preemption" policy resulting in providing nonunion workers greater protection than union workers

---

[8]*See Peninsula Sch. Dist. No. 401 v. Public Sch. Employees*, 130 Wn.2d 401, 404, 924 P.2d 13 (1996) (grievance alleging lack of just cause for nonrenewal of employment); *Olympia Police Guild v. City of Olympia*, 60 Wn. App. 556, 557, 805 P.2d 245 (1991) (grievance challenging whether City had cause for discipline); *Lew v. Seattle Sch. Dist. No. 1*, 47 Wn. App. 575, 577, 736 P.2d 690 (1987) (breach of contract).

[9]*See Minter v. Pierce Transit*, 68 Wn. App. 528, 532, 843 P.2d 1128 (citing *Lew*, 47 Wn. App. at 577-78), *review denied*, 121 Wn.2d 1023 (1993).

[10]In *United Foods* the nonnegotiable rights were established by state statute. In Wilson's case, the state rights relied on are based in tort.

[11]*See United Food*, 84 Wn. App. at 55.

[12]102 Wn.2d 219, 231-33, 685 P.2d 1081 (1984).

under state law.[13] We decline to establish a rule that would provide protection against wrongful discharge in contravention of public policy for at-will employees while denying such protection to employees who may be terminated only for cause. The wrongful discharge tort emerged as an exception to the at-will employment doctrine, and arguably was aimed at providing added job security, similar to that already held by for-cause employees.[14] Although the cause of action continues to be analytically framed as an exception to the at-will employment doctrine,[15] Washington case law does not explicitly declare that the tort is available only to at-will employees.[16] We focus on the public policy aspect of the wrongful discharge tort in holding that the cause of action does not depend on the contractual status of the employment relationship. We agree with the conclusion that "[a] primary purpose behind giving employees a right to sue for discharges in violation of public policy is to protect the vital state interests embodied in such policies."[17]

Concluding that there is no logical basis to distinguish between at-will employees and for-cause employees in

[13]*See Ervin v. Columbia Distrib., Inc.*, 84 Wn. App. 882, 889-90, 930 P.2d 947 (1997) (minimum wage act) (citing *Livadas*, 512 U.S. at 128-32).

[14]*See Thompson*, 102 Wn.2d at 233 ("[E]mployee job security is protected against employer actions that contravene a clear public policy.").

[15]*See Thompson*, 102 Wn.2d at 231-33; *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 935, 913 P.2d 377 (1996).

[16]*See Reninger v. Department of Corrections*, 79 Wn. App. 623, 634, 901 P.2d 325 (1995) (noting that the tort of wrongful discharge is generally, if not exclusively, applied to employment at will situations) (constructive discharge case brought by civil service employee) (quoting *Micone v. Town of Steilacoom Civil Serv. Comm'n*, 44 Wn. App. 636, 643 n.2, 722 P.2d 1369, *review denied*, 107 Wn.2d 1010 (1986)), *review granted*, 129 Wn.2d 1006 (1996); *White v. State*, 78 Wn. App. 824, 839-40, 898 P.2d 331 (1995) (court declined to extend the tort to include wrongful transfers and for-cause employees, yet based its decision on considerations related to problems in extending the tort to include wrongful transfer of employees), *aff'd in part, rev'd in part on other grounds*, 131 Wn.2d 1, 929 P.2d 396 (1997). *But see Keenan v. Allan*, 91 F.3d 1275, 1280 n.7 (9th Cir. 1996) ("the common law public policy exception only applies to at-will employees") (citing *Thompson*).

[17]*See Retherford v. AT&T Communications, Inc.*, 844 P.2d 949, 960 (Utah 1992).

cases of wrongful termination for reasons violative of fundamental principles of public policy, the California Court of Appeals noted:

> [T]he theoretical reason for labeling the discharge wrongful . . . is not based on the terms and conditions of the contract, but rather arises out of a duty implied in law on the part of the employer to conduct its affairs in compliance with public policy, expressed judicially or by statute.[18]

Providing at-will employees a greater remedy than that available to for-cause employees for an employer's violation of public policy is illogical and based on an unjustified distinction.[19]

We hold that the tort of wrongful discharge in contravention of public policy is available to for-cause employees like Wilson. Therefore, we must next consider whether Wilson may bring the common-law cause of action notwithstanding the existence of other remedies available to him.

### III

■■ The framework for determining whether a cause of action exists for wrongful discharge in contravention of public policy when the declaration of public policy is made in a statute already providing a remedy is set out in *Wil-*

---

[18]*Koehrer v. Superior Court*, 181 Cal. App. 3d 1155, 226 Cal. Rptr. 820, 826 (1986); *see also Ryherd v. General Cable Co.*, 124 Ill. 2d 418, 530 N.E.2d 431, 433 (1988) (claims for retaliatory discharge not generally preempted by federal law, even where employee is covered by a CBA and where the agreement forbids discharges absent just cause and provides for arbitration); *Midgett v. Sackett-Chicago, Inc.*, 105 Ill. 2d 143, 473 N.E.2d 1280, 1283-84 (1984) (noting that there is no reason to afford a tort remedy to at-will employees but to limit union members to contractual remedies when the public policy against retaliatory discharge applies with equal force in both situations). We note that a few states have explicitly declined to extend the tort of wrongful discharge "beyond the limited context in which it has been recognized" and hold that the tort is available only to otherwise at-will employees. *Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp.*, 106 N.M. 19, 738 P.2d 513, 515 (1987); *see also Phillips v. Babcock & Wilcox*, 349 Pa. Super. 351, 503 A.2d 36, 38 (1986).

[19]*See Koehrer*, 226 Cal. Rptr. at 826.

*mot v. Kaiser Aluminum & Chemical Corp.*[20] Whether or not the statute provides the mandatory and exclusive remedy, thus precluding an independent wrongful discharge claim, depends on the particular statute's language and provisions, and may also depend in part on other manifestations of legislative intent.[21]

Wilson claims that his discharge violated the public policy against terminating employees for engaging in whistleblowing activity. Wilson apparently relies on the expression of this public policy found in the following: (1) the State Employee Whistleblower Act, specifically RCW 42.40.050 (retaliatory action against whistleblower—remedies), (2) the Local Government Whistleblower Act, specifically RCW 42.41.040 (retaliatory action unlawful), (3) Monroe City Policy #92-39, regarding reporting of improper governmental action and protecting employees against retaliation, and (4) the Washington Industrial Safety and Health Act (WISHA), specifically RCW 49.17.160 (prohibiting discrimination against employees who file complaints).[22] We address each of these provisions in turn.

The State Employee Whistleblower Act is intended to protect the rights of state employees who are encouraged to disclose improper governmental actions.[23] Because Wilson was not a state employee, he is not entitled to the remedies provided by the state Act.[24]

The Local Government Whistleblower Act contains an exemption provision that states:

> Any local government that has adopted or adopts a program for reporting alleged improper governmental actions

---

[20]118 Wn.2d 46, 821 P.2d 18 (1991).

[21]*Wilmot,* 118 Wn.2d at 54.

[22]We decline to address, as immaterial, the City's argument that neither RCW 42.41 nor Policy #92-39 provides a personal right of action.

[23]RCW 42.40.010; RCW 42.40.020(2).

[24]*See* RCW 42.40.050 (whistleblower subject to retaliatory dismissal entitled to the remedies provided under chapter 49.60 RCW).

and adjudicating retaliation resulting from such reporting shall be exempt from this chapter if the program meets the intent of this chapter.[25]

Effective October 1992, the City enacted Policy #92-39,

> to encourage reporting by its employees of improper governmental action taken by the City of Monroe officers or employees and to protect City of Monroe employees who have reported improper governmental actions in accordance with City of Monroe's policies and procedure(s).

We reject Wilson's argument that the City is not exempt from RCW 42.41 because Policy #92-39 does not meet the intent of that statute. The remedies provided by Policy #92-39 are not substantially weaker than under the statute; under the policy the employee may obtain "appropriate relief provided by law." Furthermore, a section of the policy Wilson characterizes as an escape clause does not, as he argues, permit the City to disregard the administrative judge's decision. The only discretion provided to the City under the relevant section of Policy #92-39 relates to subsequent treatment of the retaliator. Therefore, the City does not have the authority to disregard the administrative judge's decision related to the appropriate relief available to the complaining employee. We hold that Policy #92-39 meets the intent of RCW 42.41, and that Wilson is subject to the provisions of Policy #92-39 and entitled to its remedies.

Wilson also points to the public policy regarding whistleblowing set forth in WISHA, specifically RCW 49.17.160. We next examine the provisions of the remedies available to Wilson, RCW 49.17.160 and Policy #92-39, to determine whether they provide mandatory and exclusive remedies, thereby precluding Wilson's common-law wrongful discharge claims. Among the factors to be considered are whether the statute contains language of exclusivity, ei-

[25]RCW 42.41.050.

ther express or suggestive, and the comprehensiveness or adequacy of the statutory remedy.[26]

Under Policy #92-39, City employees are protected from retaliation for good faith reporting of improper governmental action. City employees may request a hearing to establish that a retaliatory action occurred and "to obtain appropriate relief provided by law." Upon receipt of the request for hearing, the City "shall apply . . . to the State Office of Administrative Hearings for an adjudicative proceeding."

WISHA makes it unlawful to discharge or otherwise discriminate against any employee because "such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, . . . or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter."[27]

Any employee who believes he has been discharged or discriminated against in violation of RCW 49.17.160(1) may file a complaint alleging such discrimination.[28] Upon receipt of the complaint, the director "shall cause such investigation to be made as he deems appropriate."[29] After investigation, if the director determines that a violation has occurred, the director "shall bring an action" in superior court.[30] The statute continues:

> If the director determines that the provisions of this section have not been violated, the employee may institute the action on his own behalf within thirty days of such determination. In any such action the superior court shall have jurisdiction, for cause shown, to restrain violations of subsection (1) of this

---

[26]*Wilmot*, 118 Wn.2d at 56-63.

[27]RCW 49.17.160(1).

[28]RCW 49.17.160(2).

[29]RCW 49.17.160(2).

[30]RCW 49.17.160(2).

section and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.[31]

▪ Inclusion of the term "may" in the same provision as the term "shall" has been considered strong evidence that the Legislature did not intend the statute to provide exclusive procedures and remedies to redress retaliatory discharge.[32] Both Policy #92-39 and RCW 49.17.160 use the term "shall" regarding what must be done in response the employee's complaint, but use "may" in reference to the employee's initiation of the process of obtaining relief.[33] Neither Policy #92-39 nor RCW 49.17.160(2) express an intent to provide an exclusive remedy.

In concluding that the applicable statute was not intended to provide an exclusive remedy, the *Wilmot* court considered the uncertainty regarding the adequacy of the remedies available under the statute.[34] Similar uncertainties exist upon examination of both Policy #92-39 and RCW 49.17.160(2). Emotional distress damages may be recovered in a tort action based on wrongful discharge in contravention of a clear mandate of public policy.[35] While Policy #92-39 provides for "appropriate relief provided by law" and RCW 49.17.160(2) provides for "all appropriate relief including rehiring or reinstatement," it is not clear

---

[31]RCW 49.17.160(2).

[32]*Wilmot*, 118 Wn.2d at 51, 56 (holding that RCW 51.48.025(2) is not the exclusive remedy available to an employee alleging wrongful discharge in retaliation for filing a workers' compensation claim, and that such an employee may bring a wrongful discharge tort claim independent of the statute).

[33]*See* Policy #92-39, Retaliatory Actions, ¶¶ 5, 6 (employee "may" request a hearing; City "shall" apply for a hearing); RCW 49.17.160(2) (employee "may" file a complaint; director "shall" investigate, if director finds no violation, employee "may" institute the action on his own behalf).

[34]*See Wilmot*, 118 Wn.2d at 61-63 (RCW 51.48.025(2)).

[35]*See Wilmot*, 118 Wn.2d at 61 (citing *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 919, 726 P.2d 434 (1986)).

whether these provisions would include emotional distress damages.[36]

The specific remedies listed in RCW 49.17.160(2), rehiring or reinstatement with back pay, appear equitable in nature. This factor adds to our doubt that the Legislature intended "all appropriate relief" under the statute to mean all normally available damages in a tort action, and whether the employee is entitled to a jury trial.[37] Furthermore, it is unclear whether either Policy #92-39 or RCW 49.17.160(2) allow for the possibility of general damages, damages the *Wilmot* court considered necessary to an adequate remedy.[38] We note that Wilson withdrew his claim for general damages in the early stages of his claim against the City. This fact is not relevant to the issue of whether Wilson is entitled to initiate a claim for wrongful discharge in contravention of public policy notwithstanding other remedies available to him.

Additional factors considered by the *Wilmot* court and applicable to this case are: (1) ambiguity regarding who would control the suit if brought by the director and not the employee on his own behalf, (2) language that relief is to be ordered "for cause shown,"[39] which implies equity and is an unusual term to use in the context of a trial where general damages might be granted, and (3) the notion that the court "order all appropriate relief,"[40] given that a court does not generally order a defendant to pay in a civil case, but instead awards a judgment.[41]

We hold that neither Policy #92-39 nor RCW 49.17.160(2) provide mandatory and exclusive remedies.

---

[36]*See Wilmot,* 118 Wn.2d at 61.

[37]*See Wilmot,* 118 Wn.2d at 61 (regarding RCW 51.48.025(4)).

[38]*See Wilmot,* 118 Wn.2d at 62.

[39]*See* RCW 49.17.160(2).

[40]RCW 49.17.160(2).

[41]*See Wilmot,* 118 Wn.2d at 61-62.

Because this is true, Wilson may bring a cause of action for wrongful discharge in contravention of public policy.

## CONCLUSION

An employee's right to be free from discharge in contravention of public policy does not depend on the contractual status of the employment relationship. Wilson's claims do not fail because he did not exhaust his CBA remedies. The right is nonnegotiable, and adjudication of a claim based on the right does not depend on interpretation or application of the CBA. In order to give full force and effect to the strong public interest in protecting employees from retaliatory discharge, we also hold that the wrongful discharge tort is available to all employees, at-will or otherwise.

We reverse the trial court because summary judgment disposition of Wilson's claims was improper. We do not reach the merits of Wilson's claims because the issue before us is whether Wilson, a union employee who could be terminated only for cause and who was subject to a CBA arbitration clause, may bring a tort claim for wrongful discharge when the public policies relied on are included in statutes and City policy that also provide a remedy. Therefore, we reject the City's argument that Wilson did not adequately argue the applicability of RCW 49.17.160 in his complaint. Whether Wilson has adequately stated his tort claim is not at issue in this appeal.

Reversed.

Cox and ELLINGTON, JJ., concur.

Review denied at 134 Wn.2d 1028 (1998).