21 P.3d 334 (2001)
Randy Ray YOUNG, Respondent,
v.
FERRELLGAS, L.P., a partnership, Appellant.
No. 25852-8-II.
Court of Appeals of Washington, Division 2.
April 20, 2001.
D. Michael Reilly, Kimberly M Meyers, Lane Powell Spears Lubersky, Seattle, for Appellant.
Douglas James Kaukl, Pendergrass and Kaukl, Inc., PS, Puyallup, for Respondent.
HUNT, J.
Ferrellgas, Inc., (Ferrellgas) appeals an order denying its motion to compel employee Randy Young to submit his wrongful discharge and overtime compensation claims to arbitration. Finding no error, we affirm and remand for trial.

*335 FACTS

I. CAUSE OF ACTION
Ferrellgas sells liquid petroleum gas products. Ferrellgas hired Randy Young as a service technician. His duties included observing all safety rules and regulations for liquefied petroleum products, reporting violations of those rules and regulations, and delivering liquefied petroleum gas products over public highways. Young was regularly required to be on call during weekends and evenings to deliver products to customers who required supply refills after regular working hours. While on call, Young was required (1) to be in the immediate area of Ferrellgas's plant so he could respond promptly to any calls; (2) to remain in contact with a Ferrellgas dispatcher; and (3) to refrain from alcohol or medications that could render him incapable of operating a commercial vehicle. He alleges that despite his many hours of on call work beyond the regular forty-hour work week, he was compensated for his overtime work at a regular hourly rate, rather than the overtime rate, contrary to RCW 49.52.070.
In March 1998, Young informed Ferrellgas' headquarters inspectors that he
had been instructed to operate trucks carrying liquefied petroleum gas products over the public highways in an overweight condition and/or with inoperable emergency gas shutoff valves, and to avoid detection of these conditions....
Young had told the supervisors that these actions posed a danger to him, other employees, highway travelers, businesses, homes, and schools serviced by Ferrellgas trucks or located along Ferrellgas routes. But local supervisors had expressly ordered him in writing to commit these violations despite the danger they posed to the public. Young alleges that Ferrellgas fired him in retaliation for reporting unsafe conditions.

II. EMPLOYMENT CONTRACTBINDING ARBITRATION PROVISION
Young's employment contract with Ferrellgas provided that "[a]ny dispute (whether... in contract, tort, or otherwise) arising out of ... the employment relationship of the parties" was to be "fully and finally settled by binding arbitration." After exhausting administrative remedies, Young sued Ferrellgas, alleging three causes of action: (1) wrongful discharge in violation of RCW 49.17.160; (2) violation of the Washington State Minimum Wage Act (WSMWA), Chapter 49.52 RCW; and (3) breach of contract.
Ferrellgas moved to stay court proceedings on Young's claims and to compel arbitration as required in the employment agreement. Young opposed the motion, arguing that his two claims, wrongful discharge and wage violation, are statutory and, therefore, the employment contract arbitration provision does not foreclose their resolution by lawsuit. The trial court denied Ferrellgas' motion with respect to these two claims; Young's third claim, for breach of contract, is no longer in issue.[1] Ferrellgas appeals.

ANALYSIS
The issue here is whether an employment agreement mandating arbitration of disputes prohibits an employee's lawsuit against an employer for retaliatory discharge and for violating the overtime provisions of the Washington State Minimum Wage Act (WSMWA).[2] To decide this issue we examine the interplay between public policy favoring arbitration of employment disputes and legislatively established causes of action (such as the tort of wrongful discharge)a question of law. Gardner v. Loomis Armored, *336 Inc., 128 Wash.2d 931, 937, 913 P.2d 377 (1996). We review questions of law de novo. Smith v. Bates Technical Coll., 139 Wash.2d 793, 800, 991 P.2d 1135 (2000) (citing Dep't of Labor & Indus. v. Fankhauser, 121 Wash.2d 304, 308, 849 P.2d 1209 (1993)).

I. WRONGFUL DISCHARGE
Washington has long favored arbitration of employment disputes.[3] Young knowingly and voluntarily entered into an employment agreement with Ferrellgas mandating arbitration of disputes. Ferrellgas argues that the trial court erred in refusing to confine Young's claims to arbitration and in allowing his lawsuit to proceed.
But there is a strong, countervailing, public policy against wrongful discharge. An employee discharged for whistleblowing has a statutory claim for wrongful discharge. Gardner, 128 Wash.2d at 937, 913 P.2d 377. The Legislature established this tort when it enacted the Washington Industrial Safety and Health Act (WISHA):
Discrimination against employee filing complaint, instituting proceedings, or testifying prohibitedProcedureRemedy (1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.
(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this section may, within thirty days after such violation occurs, file a complaint with the director alleging such discrimination. Upon receipt of such complaint, the director shall cause such investigation to be made as he deems appropriate. If upon such investigation, the director determines that the provisions of this section have been violated, he shall bring an action in the superior court of the county wherein the violation is alleged to have occurred against the person or persons who is alleged to have violated the provisions of this section. If the director determines that the provisions of this section have not been violated, the employee may institute the action on his own behalf within thirty days of such determination. In any such action the superior court shall have jurisdiction, for cause shown, to restrain violations of subsection (1) of this section and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

RCW 49.17.160 (emphasis added).
An employment contract cannot extinguish this statutory cause of action for wrongful discharge:
[T]he right to be free from wrongful termination in violation of public policy is independent of any underlying contractual agreement....
"[An employee's] right to be free from wrongful termination in contravention of public policy may not be altered or waived by private agreement...."
Smith v. Bates Technical Coll., 139 Wash.2d 793, 809, 803, 991 P.2d 1135 (2000) (quoting Wilson v. City of Monroe, 88 Wash.App., 113, 117-18, 943 P.2d 1134 (1997)) (emphasis added). Moreover, an employee wrongfully discharged in violation of public policy need not exhaust contractual or administrative remedies before filing a lawsuit. Smith, 139 Wash.2d at 809, 816, 991 P.2d 1135.
Smith relied heavily on Wilson, a case factually similar to the instant case. In Wilson, the City of Monroe discharged a wastewater treatment plant employee shortly after he questioned work procedures that impaired public safety.[4] The employee claimed that his discharge was in retaliation for reporting *337 the safety violations. The City argued that the employment contract's arbitration provisions required arbitration of the dispute.[5] Division One rejected the City's argument because the claim was brought to vindicate the public interest as well as the employee's:

[An employee's] right to be free from wrongful termination in contravention of public policy may not be altered or waived by private agreement, and is therefore a nonnegotiable right. Furthermore, the right does not originate in the CBA[6] provision... or depend on interpretation of the CBAthe right is independent of any contractual agreement .... This is true even though resolution of the dispute may require examination of the same set of facts as would arbitration under the CBA.
Wilson, 88 Wash.App. at 117-18, 943 P.2d 1134 (emphasis added) (footnotes omitted).
Here, Young alleges not only a violation of RCW 49.17.160, retaliatory wrongful discharge, but also a violation of public policythat Ferrellgas terminated him because he reported violations of laws and regulations enacted to protect public safety during the delivery of volatile, liquefied petroleum products over public highways.[7] Moreover, a duty to report safety violations was a component of Young's job with Ferrellgas. Thus, in addition to performing job-related duties, Young served a broad public safety interest when he reported violations of rules and regulations regarding worker, highway, and public safety in the handling, transportation, and delivery of liquefied petroleum products.
Faced with a conflict between the public policy favoring arbitration and the public policy underlying the statutory tort of wrongful discharge, Smith resolves that conflict in favor of the tort action. Accordingly, we hold that the trial court properly allowed Young to maintain his retaliatory, wrongful discharge action in superior court, without requiring him to submit this claim to arbitration.

II. OVERTIME VIOLATION
Similarly, Young's claim for violating WSMWA's overtime provisions is based on broad public policy principles. If Ferrellgas failed to pay overtime as RCW 49.46.130(1) and 49.52 require, it contravened a substantive, nonnegotiable, statutorily-guaranteed right. United Food and Commercial Workers Union Local 1001 v. Mut. Ben. Life Ins. Co., 84 Wash.App. 47, 925 P.2d 212 (1996).
The liability portion of RCW 49.52.070 authorizes a civil action for overtime violations.[8]
The Legislature has evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive scheme to ensure payment of wages, including the statutes at issue here which provide both criminal and civil penalties for willful failure of an employer to pay wages.
Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co., 139 Wash.2d 824, 830, 991 P.2d 1126 (2000).[9]
Allowing an employment contract arbitration provision to replace this statutory cause *338 of action would thwart public policy guaranteeing fair wages, codified by our Legislature. We do not find persuasive Ferrellgas' argument to the contrary. Rather, we hold that the trial court properly allowed Young to pursue his overtime violation claim in superior court and did not err in refusing to require him to submit this claim to arbitration.
Accordingly, we affirm and remand for trial.
We concur: ARMSTRONG, C.J., QUINNBRINTNALL, J.
NOTES
[1] At oral argument, counsel stated that Young had dropped his contract claim.
[2] Following oral argument, Ferrellgas submitted a statement of additional authority, citing a recent United States Supreme Court case, Circuit City Stores, Inc. v. Adams, ___ U.S. ___, ___, 121 S.Ct. 1302, 1312-13, ___ L.Ed.2d ___, ___ (2001). Circuit City, however, does not pertain to the case before us: Central to the Circuit City opinion is the interplay between the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-2, and transportation workers' employment contracts. The FAA is not the subject of the instant case, nor did Ferrellgas raise any FAA-related issue on appeal. Moreover, even if Ferrellgas had raised this issue, Young likely would have been excluded as a worker involved in transporting goods in interstate commerce, exempted from the FAA.
[3] See, e.g., Munsey v. Walla Walla Coll., 80 Wash. App. 92, 94, 906 P.2d 988 (1995) ("We begin ... by noting the strong public policy in this state favoring arbitration of disputes."); Perez v. Mid-Century Ins. Co., 85 Wash.App. 760, 765, 934 P.2d 731 (1997) (recognizing same policy).
[4] The plaintiff alleged that: (1) he was instructed to recirculate sewage sludge through the plant, resulting in illegal discharges into a river; and (2) his requests for standard safety equipment were denied. Wilson, 88 Wash.App. at 116, 943 P.2d 1134.
[5] Wilson, 88 Wash.App. at 118-19, 943 P.2d 1134.
[6] "CBA" here refers to the Collective Bargaining Agreement, the employment contract containing the arbitration clause relied upon by the city in Wilson.
[7] Young alleges that Ferrellgas instructed him: (1) to carry petroleum products, with inoperable emergency shutoff valves, over the highways in violation of weight restrictions; and (2) to avoid detection of these violations.
[8] RCW 49.52.070 provides double damages for overtime violations:

Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.
[9] There, as here, the case involved a claim raised under Chapter 49.52 RCW for wage violations.