85 P.3d 389 (2004)
120 Wash.App. 354
Derek WALTERS, Appellant,
v.
A.A.A. WATERPROOFING, INC., Respondent.
No. 52294-9-I.
Court of Appeals of Washington, Division 1.
March 1, 2004.
*390 Roblin John Williamson, Attorney at Law, Seattle, WA, for Appellant.
Jeffrey P. Fairchild, Attorney at Law, Bellingham, WA, for Respondent.
*391 BAKER, J.
Derek Walters agreed to arbitrate employment disputes when he signed his employment agreement with A.A.A. Waterproofing, Inc. Later, Walters sued A.A.A. for overtime pay, and A.A.A. responded by moving to stay the proceeding pending mandatory arbitration. A.A.A.'s motion was granted. To appeal the stay, Walters moved for and was granted a final judgment and dismissal. He now appeals on several grounds. We reject his arguments that the arbitration clause lacks mutuality, is unconscionable, ambiguous, violates public policy, and does not involve commerce as defined in the Federal Arbitration Act (FAA),[1] and affirm.
The challenged arbitration clause requires arbitration of all disputes related to the employment agreement except those related to confidentiality and noncompetition. In pertinent part the arbitration clause reads:
Any dispute (except a dispute relating to a breach of Sections 6 or 11 hereof) shall be submitted by any party hereto to arbitration.
In Section 1, the agreement states that "Employer hereby employs Employee as the Division Manager for its Washington Facility and Employee shall ... actively participate in the expansion of Employer's business in the Northwestern United States through growth of its existing business into new geographic markets...."
Walters claimed that he worked in excess of 40 hours per week without receipt of overtime pay, and sued A.A.A. for damages and penalties in King County Superior Court. In response, A.A.A. successfully moved to stay the proceeding pending mandatory arbitration.
We review questions of arbitrability de novo.[2]
The crafters of the Federal Arbitration Act designed it to "ensure judicial enforcement of privately made agreements to arbitrate."[3] Section 2 of the FAA "create[s] a body of federal substantive law of arbitrability.... [that] is enforceable in both state and federal courts."[4] Moreover, section 2 "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable `upon such grounds as exist at law or in equity for the revocation of any contract.'"[5]
Walters argues that we should not apply the FAA because A.A.A. did not show that the employment agreement is a contract evidencing interstate commerce. Walters' argument raises two issues. First, does A.A.A. have a prima facie burden to establish that the FAA applies to the employment agreement? Second, if A.A.A. has a prima facie burden, did it meet that burden?
Washington law does not guide us in deciding whether A.A.A. had a prima facie burden, so we look to other authority. In Harrison v. Nissan Motor Corp. in U.S.A.,[6] the Third Circuit Court of Appeals, in dicta, commented that "as a threshold matter that, for the FAA to apply, the party seeking to compel FAA arbitration must show the existence of a written agreement that contains an arbitration clause and affects interstate commerce."[7] Courts in at least two states, Alabama and Texas, have held that the party seeking to compel arbitration must establish its right to arbitration by proving that the contract evidences a transaction affecting interstate commerce.[8]
*392 We are persuaded that the party moving to compel arbitration must make a threshold showing that a written agreement to arbitrate exists and that the contract at issue involves interstate commerce.[9] We further conclude that a sufficient showing is made when the terms of the contract evidence an undertaking involving interstate commerce. Here, the agreement requires that Walters, as the "Division Manager for [A.A.A.'s] Washington Facility[,] ... actively participate in the expansion of [A.A.A.'s] business in the Northwestern United States through growth of its existing business into new geographic markets...." On its face, the employment agreement requires Walters to participate in A.A.A.'s expansion into northwest states, not merely within Washington, and thus, evidences a transaction that substantially affects interstate commerce.
Next, Walters argues that the arbitration clause is invalid because the arbitration provision suffers from a lack of mutuality. But where the contract as a whole is otherwise supported by consideration on both sides, most courts have not ruled the arbitration clause invalid for lack of mutuality, even when the clause compelled one party to submit all disputes to arbitration but allowed the other party the choice of pursuing arbitration or litigation in the courts.[10]
Walters' argument assumes the provision will be analyzed separately from the rest of the contract. He relies on an Arkansas case that found an arbitration clause unenforceable due to lack of mutuality.[11] Even accepting his assumption that the arbitration clause should be analyzed separately from the rest of the contract and accepting the Arkansas case law as persuasive, we still reject the argument.
In Money Place, LLC v. Barnes,[12] the Arkansas Supreme Court found that the money lender had the complete choice of arbitration or court while the borrower was forced into arbitration and therefore, "[b]ecause this arbitration agreement lacks the element of mutuality, it is not a valid and enforceable agreement."[13]
The arbitration clause in Walters' employment agreement states that "[a]ny dispute (except a dispute relating to a breach of Sections 6 or 11 hereof) shall be submitted by any party hereto to arbitration." Section 6 prohibits Walters from revealing confidential information without prior written consent from A.A.A. Section 11 is a covenant not to compete. Walters argues that A.A.A. reserves the right to use the courts for the two parts of the employment agreement that are important to it, while requiring Walters to submit all of his potential disputes to arbitration.
A.A.A. and Walters must each arbitrate all claims related to the employment agreement except those related to confidentiality or noncompetition. A.A.A. does not have complete choice and Walters is not forced into arbitration exclusively. The arbitration provision does not lack mutuality.
Next, Walters argues that prohibitive costs render the arbitral forum inaccessible. In Mendez v. Palm Harbor Homes, Inc.,[14] the court held that "an arbitration agreement may be stricken when the party opposing arbitration reasonably shows in law or equity that prohibitive costs are likely to render the *393 arbitral forum inaccessible."[15] Mendez provided evidence that made the court "reasonably sure ... that [he] would have been required to spend up front well over $2,000... to resolve a potential $1,500 dispute."[16] The court commented that "[a]voiding the public court system to save time and money is a laudable societal goal. But avoiding the... system in a way that effectively denies citizens access to resolving everyday societal disputes is unconscionable."[17]
The Mendez court considered arbitration in the context of chapter 7.04 RCW, not under the FAA.[18] It is not clear that a similar analysis would apply to arbitration agreements governed under the FAA, but in any event, Walters has not shown that the costs of arbitrating his claim are prohibitive.[19] His argument thus fails.
Next, Walters argues that the arbitration agreement is unconscionable. Washington courts recognize two kinds of unconscionability substantive and procedural.[20] Substantive unconscionability involves "those cases where a clause or term in the contract is alleged to be one-sided or overly harsh."[21] Procedural unconscionability relates to "impropriety during the process of forming a contract."[22]
Walters argues both kinds. He claims substantive unconscionability because the arbitration clause requires him to waive all rights with respect to dispute resolution, while A.A.A. reserves its right to pursue certain remedies in court, and by arguing that the arbitration is cost prohibitive. He also claims procedural unconscionability by arguing that the employment contract is a contract of adhesion.
His claim for substantive unconscionability fails for the same reasons his lack of mutuality claim and his cost prohibitive defense fail. Although the arbitration agreement reserves the right to take to court disputes that are more likely to be raised by A.A.A., either party may litigate those disputes. And although the agreement compels the parties to take other disputes to arbitration, both parties are so compelled. With regard to the cost defense, Walters provides no evidence of prohibitive cost.
Walters' claim for procedural unconscionability fails as well. A contract of adhesion is not necessarily unconscionable.[23] In Tjart v. Smith Barney, Inc.,[24] we held that an arbitration provision was not unconscionable even though it was part of a contract of adhesion.[25] We noted that "[m]ost courts have rejected plaintiffs' arguments that predispute mandatory arbitration clauses are unconscionable contracts of adhesion because of mere inequality of bargaining power between employer and employee."[26] We further noted that "[w]hile the issue of unconscionability ... is a question of law for the court, the decision is one based on the factual circumstances surrounding the transaction in question."[27] Beyond his bare assertion that the contract is a contract of *394 adhesion, Walters presents no facts to support a finding of unconscionability.
Next, Walters argues that he did not waive his right to litigate a claim for overtime because the language in the arbitration clause was not sufficiently specific and unambiguous.
Similarly, Tjart argued that his arbitration provisions were confusing and ambiguous, and could not be read to require arbitration.[28] The arbitration clause referred to claims relating to termination and required that claims be submitted to arbitration.[29] We reasoned that "[a]n average person would read the provisions as including arbitration of statutory employment-related claims."[30] We quoted from an opinion of the Massachusetts appeals court stating that the court was "not aware of any rule that requires an arbitration agreement to contain a list of the specific claims or causes of action which are subject to arbitration in order to be enforceable."[31] The Massachusetts court continued that "such a requirement would be unreasonable and impractical."[32]
Following the reasoning in Tjart, we conclude that the language in Walters' employment agreement is sufficiently specific and unambiguous. Although a laundry list of specific issues is not included, the arbitration clause refers to "any dispute" related to the employment agreement, excepting two issues. An average person would read the clause as requiring Walters to submit his claim to arbitration. No more specific waiver is needed.
Next, Walters argues that enforcing the arbitration agreement would violate public policy. In Young v. Ferrellgas, L.P.,[33] the court stated that if the employer "failed to pay overtime as RCW 49.46.130(1) and chapter 49.52 require, it contravened a substantive, nonnegotiable, statutorily-guaranteed right."[34] The court noted that "[t]he liability portion of RCW 49.52.070 authorizes a civil action for overtime violations."[35] Because "[a]llowing an employment contract arbitration provision to replace this statutory cause of action would thwart public policy guaranteeing fair wages," the court held that the employee should be allowed "to pursue his overtime violation claim in superior court...."[36]
But as we observed in Tjart, the Young court did not apply the FAA.[37] We commented that "[i]t is possible that the Young panel, in not addressing FAA issues ... used state law grounds that would be inapplicable in the FAA context."[38] We then concluded that Tjart did not give up her rights by signing the arbitration agreement, only the ability to raise the issue in court.[39] Similarly, the trial court did not force Walters to give up his ability to challenge the alleged overtime pay violation, only his ability to raise the issue in court.
A.A.A. requests attorney fees and costs under RAP 14. Under RAP 14.2, "[a] commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review."[40] A.A.A. prevails, thus we award costs and statutory attorney fees.[41]
AFFIRMED.
WE CONCUR: COLEMAN, SCHINDLER, JJ.
NOTES
[1] Title 9 U.S.C.
[2] Kamaya Co. Ltd. v. Am. Prop. Consultants, Ltd., 91 Wash.App. 703, 713, 959 P.2d 1140 (1998).
[3] Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).
[4] Perry v. Thomas, 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (internal quotation marks and citations omitted).
[5] Perry, 482 U.S. at 489, 107 S.Ct. 2520 (quoting 9 U.S.C. § 2).
[6] 111 F.3d 343 (3rd Cir. 1997).
[7] Harrison, 111 F.3d at 348 n. 8 (citing 9 U.S.C. § 1, § 2, and § 4).
[8] TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (1999); Stewart Title Guar. Co. v. Mack, 945 S.W.2d 330, 333 (1997).
[9] Maxum Found., Inc. v. Salus Corp., 779 F.2d 974, 978 n. 4 (4th Cir.1985).
[10] Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179-180 (3d Cir.1999); Barker v. Golf U.S.A., Inc., 154 F.3d 788, 792 (8th Cir.1998); Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 378-79 (4th Cir.1998); Doctor's Associates, Inc. v. Distajo, 66 F.3d 438, 451 (2d Cir.1995); Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp., 878 F.2d 167, 169 (6th Cir.1989); Design Benefit Plans, Inc. v. Enright, 940 F.Supp. 200, 205 (N.D.Ill.1996); W.L. Jorden & Co., Inc. v. Blythe Industries, Inc., 702 F.Supp. 282, 284 (N.D.Ga. 1988); Willis Flooring, Inc. v. Howard S. Lease Const. Co., 656 P.2d 1184, 1185 (Alaska 1983). But see DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 81 (1st Cir.2000) (holding that both parties are required to arbitrate but commenting that "one-sided agreements to arbitrate are not favored").
[11] The Money Place, LLC v. Barnes, 349 Ark. 411, 78 S.W.3d 714, 719 (2002).
[12] 78 S.W.3d 714 (2002).
[13] The Money Place, 78 S.W.3d at 719.
[14] 111 Wash.App. 446, 45 P.3d 594 (2002).
[15] Mendez, 111 Wash.App. at 465, 45 P.3d 594.
[16] Mendez, 111 Wash.App. at 465, 45 P.3d 594.
[17] Mendez, 111 Wash.App. at 465, 45 P.3d 594.
[18] Mendez, 111 Wash.App. at 465, 45 P.3d 594.
[19] Heaphy v. State Farm Mut. Auto. Ins. Co., 117 Wash.App. 438, 446, 72 P.3d 220 (2003).
[20] Tjart v. Smith Barney, Inc., 107 Wash.App. 885, 898, 28 P.3d 823 (2001), rev. denied, 145 Wash.2d 1027, 42 P.3d 974, cert. denied, 537 U.S. 954, 123 S.Ct. 424, 154 L.Ed.2d 303 (2002).
[21] Nelson v. McGoldrick, 127 Wash.2d 124, 131, 896 P.2d 1258 (1995) (quoting Schroeder v. Fageol Motors, Inc., 86 Wash.2d 256, 260, 544 P.2d 20 (1975)).
[22] Nelson, 127 Wash.2d at 131, 896 P.2d 1258 (quoting Schroeder, 86 Wash.2d at 260, 544 P.2d 20).
[23] Mendez, 111 Wash.App. at 459, 45 P.3d 594.
[24] 107 Wash.App. 885, 28 P.3d 823 (2001), rev. denied, 145 Wash.2d 1027, 42 P.3d 974, cert. denied, 537 U.S. 954, 123 S.Ct. 424, 154 L.Ed.2d 303 (2002).
[25] Tjart, 107 Wash.App. at 898, 28 P.3d 823.
[26] Tjart, 107 Wash.App. at 898, 28 P.3d 823.
[27] Tjart, 107 Wash.App. at 898, 28 P.3d 823.
[28] Tjart, 107 Wash.App. at 896, 28 P.3d 823.
[29] Tjart, 107 Wash.App. at 896, 28 P.3d 823.
[30] Tjart, 107 Wash.App. at 896, 28 P.3d 823.
[31] Tjart, 107 Wash.App. at 896-97 n. 17, 28 P.3d 823 (quoting Mugnano-Bornstein v. Crowell, 42 Mass.App.Ct. 347, 677 N.E.2d 242, 247 (1997)).
[32] Tjart, 107 Wash.App. at 896-97 n. 17, 28 P.3d 823 (quoting Mugnano-Bornstein, 677 N.E.2d at 247).
[33] 106 Wash.App. 524, 21 P.3d 334 (2001).
[34] Young, 106 Wash.App. at 531, 21 P.3d 334.
[35] Young, 106 Wash.App. at 531, 21 P.3d 334.
[36] Young, 106 Wash.App. at 532, 21 P.3d 334.
[37] Tjart, 107 Wash.App. at 900, 28 P.3d 823.
[38] Tjart, 107 Wash.App. at 900, 28 P.3d 823.
[39] Tjart, 107 Wash.App. at 901, 28 P.3d 823.
[40] RAP 14.2.
[41] RAP 14.3(a).