[No. 51492-0-I.   Division One.   May 3, 2004.]

KRISTINE K. AWANA, ET AL., *Appellants*, v. THE PORT OF SEATTLE, ET AL., *Respondents*.

*Gregory M. Miller* and *Arthur E. Ortiz*, for appellants.

*Roderick M. Jones* (of *Jones & Jones*) and *Craig R. Watson* (of *Port of Seattle Legal Department*), for respondents.

ELLINGTON, J. — The question raised here is whether a cause of action for wrongful discharge in violation of public policy lies not just against the employer, but also against an entity with which the employer had a contract for work. We hold it does not.

## FACTS

Appellants Kristine Awana, Adrian Cantu, Leno Figueroa, Francisco Figueroa, Gabriel Serna and Fortino Vazquez all worked for Alpha Insulation, Inc., which employed them to perform asbestos abatement work. The Port of Seattle contracted with Alpha and several other firms to undertake a major renovation of the terminals at Sea-Tac International Airport.

Alpha had a day crew and a night crew on the airport project. Appellants worked on the night crew; Leno Figueroa was the crew leader. In March 1999, the crew was instructed to jackhammer the airport's south satellite terrazzo floor. Asbestos was known to exist under the floor. Figueroa believed the Port's containment procedures were inadequate and would result in asbestos exposure for his crew and the public. A dispute arose between Figueroa and the on-site asbestos oversight contractor. The entire night crew refused to work until safety procedures were instituted, and Figueroa took photographs to document safety violations. When the Port did not take action, Figueroa complained to the Department of Labor and Industries (L&I).

The next day, Alpha impounded the security badges of all its employees, including Figueroa's crew, effectively denying them access to the airport jobsite. Later that day, L&I inspectors conducted an unannounced site visit. Figueroa accompanied the inspectors. He and other members of his crew assisted L&I with its investigation.[1]

Figueroa's night crew never returned to work at the airport terminal. Alpha reassigned them to a related project demolishing houses in preparation for construction of the third runway. Several weeks later, Alpha terminated every member of Figueroa's crew. Alpha's day crew, which had not participated in the L&I inspection, returned immediately to abatement work at the airport terminal and worked there for the next year.

Appellants filed this action, naming as defendants Alpha; its owner/manager, Hector Rodriguez; the Port; and the Port's asbestos abatement supervisors, Thomas Erwin and Larry McFadden. Appellants allege wrongful discharge in violation of public policy, and breach of contract.

The Port moved for summary judgment. The trial court initially denied the motion, then reconsidered, granted summary judgment, and dismissed all claims against the Port.[2]

## DISCUSSION

■ Evidence. As an initial matter, Appellants contend the trial court erred in striking declarations submitted in response to the Port's motion for reconsideration. These declarations, however, were improper under the rule governing submissions in connection with a motion for reconsideration. CR 59(c) provides:

**Time for Serving Affidavits.** *When a motion for new trial is based upon affidavits* they shall be served with the motion. *The*

---

[1] As a result of this investigation, L&I cited the Port for general safety violations in asbestos removal, and imposed fines totaling $13,400.

[2] Alpha did not seek summary judgment. This appeal was taken pursuant to RAP 2.2(d).

*opposing party has 10 days after such service within which to serve opposing affidavits . . . .*[3]

Because the Port's motion for reconsideration was not based upon declarations, Appellants were not permitted to submit new evidence in response. The declarations were improper, and the court did not err in refusing to consider them.[4]

■ ■ Public Policy Discharge. The tort of wrongful discharge in violation of public policy is an exception to the at-will employment doctrine.[5] Appellants assert a whistleblower claim, alleging they were discharged for reporting workplace safety violations. Discharge of an employee in retaliation for safety complaints violates a clear mandate of public policy.[6] The question is whether Appellants may maintain this action *against the Port*.

An action for wrongful discharge depends, by definition, upon termination of employment. Appellants were not employees of the Port, and the Port did not terminate their employment. But Appellants take the position that a direct employment relationship should not be required. Appellants state their theories in broad terms, but their analysis centers on rules for ensuring workplace safety.

■ ■ The Port acknowledges it was both owner and general contractor for the airport renovation. General contractors control the jobsite, and therefore bear the primary responsibility for workplace safety on construction jobs.[7] This duty extends to all workers on the project, not just

---

[3] Emphasis added.

[4] The Port filed a reply, objecting to the declarations and submitting its own declarations in rebuttal. The court's order on reconsideration states that the court did not consider Appellants' declarations, but makes no reference to the Port's declarations. Appellants apparently take this silence to mean the court refused to consider their declarations, but did consider those from the Port. This is not, however, a justified assumption.

[5] *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 935, 913 P.2d 377 (1996).

[6] *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 54, 821 P.2d 18 (1991).

[7] *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 464, 788 P.2d 545 (1990).

those employed by the general contractor.[8] If the project owner retains the right to control the manner in which the contractors complete their work, the owner has an equivalent responsibility.[9]

Appellants contend this duty to protect them from workplace hazards includes a duty to refrain from discharging them in retaliation for whistleblowing. Appellants point out that state and federal law protects government contractors from retaliation for protected activities such as safety complaints.[10] They remind us that while the wrongful discharge doctrine in Washington originally applied only to at-will employees, it has been extended to for-cause employees, because the interests protected by public policy tort claims are no different where a contract controls the employment relationship.[11] Finally, they contend the Port owed them a duty as their de facto employer.

■ Several difficulties attend these arguments. The duty to ensure workplace safety flows from control over the workplace, which gives the general contractor the ability to observe, correct, or prevent safety violations. Control over the jobsite does not, however, confer control over the employment of a subcontractor's workers. Appellants do not explain how an owner/contractor is to carry out a duty to refrain from retaliatory discharge of workers employed by subcontractors. Appellants were not independent contractors, so the cases involving independent government contractors are not pertinent. Cases extending public policy discharge remedies to all employees addressed only

---

[8] *Id.* at 458.

[9] *Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 125, 52 P.3d 472 (2002).

[10] *See Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 116 S. Ct. 2342, 135 L. Ed. 2d 843 (1996) (independent contractors protected by First Amendment against termination or nonrenewal of at-will government contracts in retaliation for exercise of freedom of speech); *Port of Longview v. Int'l Raw Materials, Ltd.*, 96 Wn. App. 431, 979 P.2d 917 (1999) (permitting, in unlawful detainer action brought by government entity, affirmative defense of retaliation for exercise of First Amendment rights).

[11] *See Smith v. Bates Technical Coll.*, 139 Wn.2d 793, 807, 991 P.2d 1135 (2000); *Wilson v. City of Monroe*, 88 Wn. App. 113, 120, 943 P.2d 1134 (1997).

whether the existence of a collective bargaining agreement *prevented* a cause of action for wrongful discharge;[12] they did not suggest that in wrongful discharge cases the relationship between employer and employee might be dispensed with altogether.

Appellants' contention that the Port's control over them was so great that the Port was their de facto employer is not supported by the record or by any authority. The contract between Alpha and the Port expressly vests in Alpha responsibility for Alpha's employee relations; the Port had no contractual or other right to intervene. On this point, Appellants' argument is based entirely upon cases distinguishing employees from independent contractors. As Appellants were neither employees nor independent contractors of the Port, these cases have no relevance here.[13] Whatever the Port controlled, it was not Appellants' de facto employer.

Lastly, Appellants draw heavily from a law review article entitled *Wrongful Discharge of Independent Contractors: A Source-Derivative Approach to Deciding Who May Bring a Claim for Violation of Public Policy*, in which the author proposes extending the wrongful termination doctrine to individual independent contractors whose contracts are terminated for reasons that violate public policy and who have no other remedy.[14] The term "source-derivative" refers to the source and purpose of the public policy allegedly violated, and expresses the idea that when the public policy allegedly violated is not based on employment, an independent contractor should not be barred from an action for wrongful discharge against the contracting party:

---

[12] *Smith*, 139 Wn.2d at 807-08; *Wilson*, 88 Wn. App. at 119.

[13] *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992); *Sonners v. Dep't of Labor & Indus.*, 101 Wn. App. 350, 357, 3 P.3d 756 (2000).

[14] Lisa J. Bernt, *Wrongful Discharge of Independent Contractors: A Source-Derivative Approach to Deciding Who May Bring a Claim for Violation of Public Policy*, 19 YALE L. & POL'Y REV. 39 (2000).

When an independent contractor presses a claim for wrongful termination based on a public policy violation, instead of basing its decision solely on employment status, the court needs to take a close look at the source of public policy offered . . . .

When the underlying source of public policy was enacted to promote a public policy that is not dependent on an employment relationship . . . there is no reason to limit the public policy case to employees.[15]

Appellants ask us to adopt this analysis and hold that because workplace safety duties do not depend upon an employment relationship, their remedy for wrongful termination should not be limited to an action against their employer. They strongly contend the Port should not be immune to consequences if it uses its influence to accomplish an impermissible objective, such as urging retaliation against a worker who makes a safety complaint.

This is the real nub of their action here. But unlike the individuals whose cause of action is championed in the article, Appellants were not independent contractors. And unlike the independent contractors described in the article, Appellants do have a remedy against the Port. Based upon their theory that the Port encouraged Alpha to terminate their employment,[16] Appellants presumably have an action against the Port for tortious interference with contractual relations.[17]

---

[15] *Id.* at 40.

[16] The Port contends there is no evidence linking the Port with Alpha's decision to discharge Appellants. Alpha's owner Rodriguez testified the decision was made for payroll considerations and because he wanted to avoid conflict with the Port's asbestos consultant. The Port presented evidence it sought the return of the crew and regarded their work as very good. Appellants submitted testimony from Alpha's co-owner, however, that after Appellants contacted L&I, the Port's program supervisor stated he did not want to see them at the airport terminal again. Appellants contend that, given the fact they never returned to the terminal to work and were terminated not long thereafter, this evidence creates a question of fact. For purposes of this opinion, we assume it does.

[17] *See Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997). A party to a contract cannot interfere with its own contract. *Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 448, 951 P.2d 782 (1998).

■ Courts generally extend tort doctrines only where existing remedies are inadequate.[18] Such is not the case here. Appellants were hired and fired by Alpha. A whistleblower action for wrongful discharge in violation of public policy therefore lies against Alpha. Additionally, a remedy for discharge in retaliation for worker safety complaints is supplied by statute:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.[19]

This statute gives superior courts power to restrain violations and to order appropriate relief, including rehiring or reinstatement with back pay. And as described above, Appellants have a cause of action for tortious interference against the Port.

## CONCLUSION

The wrongful discharge doctrine must be extended with caution. Perhaps a case can be made for its application outside the traditional employment context. But the doctrine is a narrow and specialized craft, and should not be sent adventuring when no rescue appears to be called for.

The trial court properly dismissed Appellants' claims of wrongful discharge against the Port.

Affirmed.

Cox, C.J., and BECKER, J., concur.

Reconsideration denied July 7, 2004.
Review denied at 153 Wn.2d 1022 (2005).

---

[18] *See, e.g., Wilmot,* 118 Wn.2d at 61.

[19] RCW 49.17.160(1).