## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BANGORN SAYASENG AND BRANDON SAYASENG, individually and on behalf of all those similarly situated, | No. 87485-3-I |
| Respondents, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| GEODIS LOGISTICS, LLC, a Tennessee Limited Liability Company, | |
| Appellant. | |

COBURN, J. — Bangorn Sayaseng and Brandon Sayaseng filed a class action complaint against Geodis Logistics (Geodis) for wage and hour violations under various Washington statutes, including the Minimum Wage Act[1] (MWA) and the Wage Rebate Act[2] (WRA). Geodis appeals the trial court's denial of its motion to compel arbitration under the plaintiffs' respective arbitration agreements. We affirm.

FACTS

Geodis operates a logistics business through a warehouse in Auburn, where products are stored and shipped to various Starbucks locations in Washington and

---

[1] Ch. 49.46 RCW.
[2] Ch. 49.52 RCW.

other states. Bangorn[3] worked for Geodis at the warehouse for several months in 2023 as an operator, moving pallets of products and reviewing outgoing shipments to Starbucks locations. For a two-month period in 2023, Brandon picked products off the warehouse shelves and put them in boxes for shipment.[4]

As part of their individual hiring processes, Brandon and Bangorn each signed arbitration agreements prior to their first day of work at Geodis' warehouse.[5] Both agreements contain a choice-of-law provision stating the agreements are governed by the Federal Arbitration Act[6] (FAA).

Bangorn's agreement generally pertains to any claim arising out of her employment with Geodis, including "disputes arising out of or relating to" "minimum wage" and "breaks and rest periods" or "pay equity claims." The agreement does "not apply to disputes that an applicable federal statute expressly states cannot be arbitrated or subject to a pre-dispute arbitration agreement."[7]

Brandon's agreement covers any employment-related claims against Geodis, as Staffmark's "customer,"[8] "such as disputes concerning … pay." The agreement does not cover claims for "any federal or state-law claims that [Brandon] cannot legally agree to

---

[3] Because plaintiffs have the same surname, we refer to them by their first names for clarity.

[4] Brandon was employed by Staffmark, a temporary staffing agency that provides temporary workers to Geodis under a service agreement.

[5] Brandon does not dispute that he signed an arbitration agreement prior to his work at the warehouse in 2023. Bangorn argued below that she did not sign the agreement presented by Geodis and had never seen it before litigation. Though she maintains this position on appeal, we assume without deciding that an agreement exists as the result (denial of the motion to compel arbitration) would be the same either way.

[6] 9 U.S.C. §§ 1-14.

[7] The agreement also excludes "any claims arising from restrictive covenant agreements," "claims for discrimination, harassment or retaliation," and "claims for interference with leave laws, workers compensation, and unemployment."

[8] There appears to be no dispute that Brandon's agreement covers claims against Geodis as a customer of Staffmark.

arbitrate," among other exceptions.[9] The agreement dictates that "the arbitrator will apply applicable federal law and the laws of the State in which [Brandon] currently or [was] most recently employed by 'the company.'"

Both agreements contain a class action waiver. Bangorn's agreement states:

> For any Covered Claims, I knowingly and voluntarily waive any right to file or participate in a class, collective, or representative action and, instead, agree that any such claims that I have or may have in the future shall be subject to individual arbitration under this Agreement as the sole and exclusive remedy ("Class and Representative Action Waiver"). An arbitrator does not have authority to proceed under this Agreement on a class, collective, or representative action basis.
> …
> I … UNDERSTAND THAT BY USING INDIVIDUAL ARBITRATION WE ARE GIVING UP ANY RIGHT TO HAVE ANY COVERED CLAIM DECIDED BY A JUDGE OR JURY IN COURT, AND ARE WAIVING ANY RIGHT TO FILE OR PARTICIPATE IN A CLASS, REPRESENTATIVE, OR COLLECTIVE ACTION IN ANY FORUM WITH REGARD TO COVERED CLAIMS.

Brandon's agreement states that "[b]y accepting or continuing your employment with 'the company', you agree … as follows":

> Waiver of Class and Collective Claims. You agree that covered claims will only be arbitrated on an individual basis, and that both you and "the company" waive the right to participate in or receive money from any class, collective, or representative proceeding. You may not bring a claim on behalf of other individuals, and any arbitrator hearing your claim may not arbitrate any form of a class, collective, or representative proceeding.

(Boldface omitted.)

Additionally, both agreements state that any disputes regarding the enforceability of their respective class action waivers may only be resolved by a "court of competent jurisdiction and not by an arbitrator."

Brandon's agreement has a "Savings Clause," which states that "[i]f any

---

[9] The agreement also does not cover claims for workers' compensation, unemployment compensation benefits, or emergency injunctive relief.

3

provision of this Agreement is found to be unenforceable, the remainder of this Agreement will remain intact and be enforceable." Bangorn's agreement does not include a severability or savings clause.

In March 2024 plaintiffs filed a class action complaint for damages on behalf of "all individuals currently or formerly employed" by Geodis, alleging wage, hour, and break violations under Washington's MWA, WRA, Industrial Welfare Act,[10] and the Wage Payment Act (WPA).[11] In July Geodis filed a motion to compel arbitration. The trial court denied the motion, concluding that plaintiffs were exempt from the FAA as transportation workers based on their job duties.[12] The court concluded this barred the enforcement of the arbitration agreements and that "Washington law does not apply to an arbitration agreement governed by the FAA."[13] The court denied Geodis' motion for reconsideration.

Geodis appeals.

## DISCUSSION

We review a trial court's decision on a motion to compel arbitration de novo. Oakley v. Domino's Pizza LLC, 23 Wn. App. 2d 218, 223, 516 P.3d 1237 (2022). "The party opposing arbitration bears the burden of showing that the agreement is not

---

[10] Ch. 49.12 RCW.

[11] Ch. 49.48 RCW.

[12] Under the FAA, "[a] written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy … shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. However, "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are specifically exempted. 9 U.S.C. § 1; see also Sw. Airlines Co. v. Saxon, 596 U.S. 450, 457, 142 S. Ct. 1783, 213 L. Ed. 2d (2022) (holding that "any class of workers directly involved in transporting goods across state or international borders falls within … [the transportation worker] exemption [under the FAA]").

[13] The trial court also noted that while it was unnecessary to decide whether Bangorn's agreement was authentic given its ruling denying Geodis' motion to compel arbitration, a hearing would be necessary to decide that issue should it be necessary to do so.

enforceable." Zuver v. Airtouch Commc'ns, Inc., 153 Wn.2d 293, 302, 103 P.3d 753 (2004).

### Severability and Choice of Law

"Courts are generally loath to upset the terms of an agreement and strive to give effect to the intent of the parties." Zuver, 153 Wn.2d at 320. Consequently, where an arbitration agreement contains a severability clause, courts often strike the offending provisions to "preserve the contract's essential term of arbitration." Id. But if "the offending provisions 'permeate an agreement ... such that severance would essentially require us to rewrite the dispute resolution agreement,' we strike the entire agreement or section." Oakley, 23 Wn. App. 2d at 230 (quoting McKee v. AT & T Corp., 164 Wn.2d 372, 402-03, 191 P.3d 845 (2008)).

Geodis does not challenge the trial court's conclusion that the parties cannot be compelled to arbitrate their claims under the FAA because the arbitration agreements are exempted from the FAA. Rather, Geodis contends that the court erred when it decided that the arbitration agreements were not otherwise enforceable under Washington law. We address each of the plaintiffs' contracts in turn.

### Brandon's Agreement

As stated above, Brandon's agreement contains a savings clause providing that in the event "any provision of this Agreement is found to be unenforceable, the remainder of this agreement will remain intact and be enforceable." Geodis maintains that this means that while arbitration may not be required under the FAA, the parties nonetheless contracted to arbitrate.

Plaintiffs argue that the trial court did not determine whether the agreements'

choice of law provision was unenforceable. Rather, citing Rittmann v. Amazon.com, Inc., 971 F.3d 904 (9th Cir. 2020), plaintiffs assert that by applying the FAA and denying arbitration under the transportation worker exemption, the trial court enforced the choice of law provision. This court rejected this same argument previously in Oakley, noting that the Rittmann court's conclusion that the subject agreement's FAA choice-of-law provision "was not unconscionable failed to address the question of whether the choice of the FAA was unenforceable." 23 Wn. App. 2d at 231 & n.11 (citing Rittmann, 971 F.3d at 908, 920 n.10).

We conclude, as we decided in Oakley, that the transportation exemption rendered the agreement's FAA choice-of-law provision unenforceable. 23 Wn. App. 2d at 231.

We further conclude that the unenforceable choice of law provision is severable under the agreement's savings clause because it does not permeate the agreement such that "severance would essentially require us to rewrite" the agreement." McKee, 164 Wn.2d at 402-03.

Unlike the choice of law provision considered in this case, the Ninth Circuit in Rittmann considered a choice-of-law provision that selected Washington law to govern a contract, except for the arbitration provision, which was instead to be uniquely governed by the FAA. Rittmann, 971 F.3d at 908, 920 & n.10. The Rittmann court concluded that severing the provision would essentially rewrite the contract given that the parties specifically chose to "treat[] the arbitration provision differently" from the rest of the contract by applying different law. 971 F.3d at 920. That is not the case here.

In the instant case, the arbitration agreement is comprised of 16 separately

6

numbered provisions, and the last provision, number 16, is the choice of law provision. None of the other provisions reference the FAA. Thus, striking the choice-of-law provision would not require any rewriting. See Zuver, 153 Wn.2d at 320. This is also consistent with Oakley, where we concluded that "[t]he choice of the FAA does not permeate the agreement such that severing the provision would require rewriting the agreement." 23 Wn. App. 2d at 232.

As such, there is no effective choice of law provision governing the agreements. "'In the absence of an effective choice of law by the parties, the validity and effect of a contract are governed by the law of the state having the most significant relationship with the contract.'"[14] Id. (internal quotation marks omitted) (quoting Shanghai Com. Bank Ltd. v. Chang, 189 Wn.2d 474, 484-85, 404 P.3d 62 (2017)). To this extent, we agree with Geodis that, generally, an unenforceable FAA choice-of-law provision does not necessarily render an arbitration agreement unenforceable when there is a severability or savings clause.

Here, there is no dispute that Washington law bears the most significant relationship to the contracts at issue. But, plaintiffs also argue that the class action waivers in the arbitration agreements render the agreements unconscionable and thus unenforceable under Washington law. We agree.

In its reply brief, Geodis asserts that the class action waiver provisions are merely "simple and innocuous waiver[s] of a procedural and discretionary right." Geodis

---

[14] "The determination of which state has the most significant relationship turns on '(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.'" Oakley, 23 Wn. App. 2d at 232 (internal quotation marks omitted) (quoting Shanghai Com. Bank. Ltd., 189 Wn.2d at 485).

also avers that plaintiffs waived this argument because plaintiffs did not raise it below. See RAP 2.5(a).

It is true that plaintiffs raise the unconscionability argument for the first time on appeal. However, both arbitration agreements contain delegation clauses that stipulate that any claims that the class action waivers are unconscionable or unenforceable can only be decided by the courts and not by an arbitrator. Thus, because this is a question of law that will need to be decided by a court under the terms of these contracts, we choose to exercise our discretion to answer it in the interest of judicial economy. See RAP 1.2(c), 2.5(a); see also King County v. Seawest Inv. Assocs., LLC, 141 Wn. App. 304, 310, 170 P.3d 53 (2007) ("We may affirm on any basis supported by the record even if the trial court did not consider the argument.") (citing LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989)).

Here, Brandon's agreement requires covered claims to be "arbitrated on an individual basis" and that Brandon waive his right to "bring a claim on behalf of other individuals" or "participate in or receive money from any class, collective, or representative proceeding." Additionally, under the agreement, any arbitrator is forbidden from "arbitrat[ing] any form of a class, collective, or representative proceeding."

Arbitration is generally favored under Washington law. Burnett v. Pagliacci Pizza, Inc., 196 Wn.2d 38, 46, 470 P.3d (2020) (citing RCW 7.04A.060; Adler v. Fred Lind Manor, 153 Wn.2d 331, 342, 103 P.3d 773 (2004)). However, "[a]rbitration agreements stand on equal footing with other contracts and may be invalidated by '[g]eneral contract defenses such as unconscionability.'" Id. at 47 (quoting McKee, 164 Wn.2d at 383). "An

agreement that violates public policy may be void and unenforceable." <u>Scott v. Cingular Wireless</u>, 160 Wn.2d 843, 851, 161 P.3d 1000 (2007).

In <u>Oakley</u>, we concluded that a "class action waiver [of wage and hour claims] frustrates our state's public policy of protecting workers' rights to undertake collective actions and ensure the proper payment of wages." <u>Oakley</u>, 23 Wn. App. 2d at 235. A "primary function of the class action is to provide a procedure for vindicating claims [that], taken individually, are too small to justify individual legal action but which are of significant size and importance if taken as a group." <u>Chavez v. Our Lady of Lourdes Hosp. at Pasco</u>, 190 Wn.2d 507, 514, 415 P.3d 224 (2018) (alteration in original).

In an attempt to distinguish the present case from the facts in <u>Oakley</u>, and relying on the Washington Supreme Court's decision in <u>Scott</u>, Geodis seems to assert that the plaintiffs must show that they cannot pursue their claims individually to establish that the class action waiver is unconscionable. Neither <u>Oakley</u> nor <u>Scott</u> stands for this proposition. Rather, in <u>Scott</u>, the Supreme Court decided that a class action waiver in a cellular service subscriber contract was substantially unconscionable violating public policy because it effectively exculpated Cingular Wireless from potential liability, given that the claims were individually small and "practically, attorneys are generally unwilling to take on individual arbitrations to recover trivial amounts of money." 160 Wn.2d at 847, 854-57. As the <u>Scott</u> court recognized, "[t]his is, of course, precisely why class actions were created in the first place." 160 Wn.2d at 856.

Geodis further attempts to distinguish the instant case from <u>Scott</u>, arguing that because this matter is merely a "garden variety wage and hour claim," plaintiffs do not require attorneys and can instead rely on the state Department of Labor and Industries

to administer their claims. However, our state Supreme Court has specifically recognized the value of class actions in the context of alleged wage and hour violations. See Chavez, 190 Wn.2d 507 at 524.

In Chavez, plaintiffs sought class certification for nurses allegedly deprived of wages for missed breaks. 190 Wn.2d at 511-12. Our Supreme Court recognized that concentrating claims into a class action was desirable because the individual employees "likely do not have the bargaining power to achieve systemic victories." Id. at 524. Indeed, even if employees can afford a lawyer individually, the Chavez court observed that a prohibition on class actions risks discouraging the vindication of worker rights because individual employees may be reluctant to sue their employers. Id. (citing Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 268 (D. Conn. 2022) ("[C]lass members may fear reprisal and would not be inclined to pursue individual claims.")). The Chavez court further observed that the nurses' mere filing of the class action appeared to have caused the employing hospital to change its procedures and practices for tracking employees' breaks. 190 Wn.2d at 524. Moreover, our state legislature has showed "'a strong policy in favor of payment of wages due employees by enacting a comprehensive scheme to ensure payment of wages' in the Minimum Wage Act, creating a 'substantive, nonnegotiable, statutorily-guaranteed right.'" Oakley, 23 Wn. App. 2d at 234 (quoting Young v. Ferrellgas L.P., 106 Wn. App. 524, 531-32, 21 P.3d 334 (2001)). We thus conclude the class action waiver provision in Brandon's agreement is unconscionable as a matter of law.

Given that Brandon has elected to pursue his claims as a class action, because we hold the class action waiver provision is unconscionable, Geodis cannot compel

Brandon to pursue his claim as an individual claim only through arbitration.[15] Specific wage and hour claims that plaintiffs allege are incompatible with arbitration. Again, plaintiffs seek to vindicate statutory rights that are independent, non-negotiable, and thus cannot be arbitrated. See, e.g., Hill v. Garda CL Nw., Inc., 198 Wn. App. 326, 353, 394 P.3d 390 (2017), rev'd on other grounds, 191 Wn.2d 553, 424 P.3d 207 (2018) ("Plaintiffs' state right to meal periods is both independent and nonnegotiable."); United Food & Com. Workers Union Local 1001 v. Mut. Beneficial Life Ins. Co, 84 Wn. App. at 48-49, overruled on other grounds by Seattle Pro. Eng'g Ass'n, 139 Wn.2d at 834-35 (affirming trial court's denial of motion to compel arbitration of alleged wage and hour violations because "the statutes upon which they rely create nonnegotiable rights"); Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 157, 961 P.2d 371 (1998) (citing United Food & Com. Workers Union Local 1001, 84 Wn. App. 47 at 51-52, for its discussion of "statutory scheme of state laws granting employees nonnegotiable, substantive rights regarding minimum standards for working conditions, wages, and the payment of wages" under the MWA, WPA, and RCW 49.52.050). Permitting employment contract arbitration provisions to supplant statutory causes of actions for wage and hour violations "'would thwart public policy guaranteeing fair wages, codified by our Legislature.'" Oakley, 23 Wn. App. 2d at 234 (quoting Young, 106 Wn. App. at 532). By its own terms, Brandon's arbitration agreement does not apply to claims that he cannot legally agree to arbitrate.

For these reasons, we conclude that the trial court did not err in denying Geodis' motion to compel arbitration of Brandon's claims.

---

[15] We need not determine if the arbitration agreement would otherwise be enforceable as to claims other than the type of claims raised in the case before us.

<u>Bangorn's Agreement</u>

Unlike Brandon's agreement, Bangorn's agreement does not contain a severability clause that would allow us to sever the agreement's unenforceable FAA choice-of-law provision. This fact alone could end our inquiry. <u>See</u> <u>Oakley</u>, 23 Wn. App. 2d 230 n.10 ("[I]f the designation of the FAA is not severable, then the FAA would control and prevent this court from taking any further action"). Regardless, the class action waiver in Bangorn's agreement is also unconscionable and not severable. Finally, Bangorn, like Brandon, seeks to invoke statutory rights incompatible with arbitration. We therefore conclude that Bangorn, like Brandon, cannot be compelled to arbitrate her wage and hour claims.

We affirm.[16]

_Coburn, J._

WE CONCUR:

_Feldman, J._  _Diaz, J._

---

[16] We need not reach plaintiffs' arguments regarding the unconscionability of additional provisions in the arbitration agreements.